EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| MMR Supermarket, Inc.<br><br>Apelado<br><br>v.<br><br>Municipio Autónomo de San Lorenzo,<br>Honorable José Román Abreu<br><br>Apelante | 2022 TSPR 99<br><br>209 DPR \_\_\_\_ |

Número del Caso: AC-2020-36


Fecha: 21 de julio de 2022


Tribunal de Apelaciones:

    Panel III


Abogado de la parte apelante:

    Lcdo. Ricardo Rolón Morales


Abogado de la parte apelada:

    Lcdo. Carlos F. López
    Lcdo. Enrique Peral


Materia: Sentencia del Tribunal con Opiniones de conformidad.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| MMR Supermarket, Inc.<br><br>Apelado<br><br><br>v.<br><br><br>Municipio Autónomo de San Lorenzo, Honorable José Román Abreu<br><br>Apelante | AC-2020-0036 | *Apelación* |

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de julio de 2022.

Atendido el recurso de Apelación sobre el caso de referencia, se confirma la *Sentencia* emitida por el Tribunal de Apelaciones que, a su vez, confirmó la *Sentencia* dictada por el Tribunal de Primera Instancia. En virtud de esos dictámenes, se declaró nula *ab initio* e inconstitucional la Ordenanza 16-OT, Serie 2016-2017 aprobada por el Municipio de San Lorenzo.

En consecuencia, sostenemos la determinación de los foros inferiores y declaramos la inconstitucionalidad de la referida Ordenanza.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió una *Opinión de Conformidad.* El Juez Asociado señor Rivera García emitió una *Opinión de Conformidad* a la cual se le unen los Jueces Asociados señores Feliberti Cintrón, Estrella Martínez y Colón Pérez. La Jueza Asociada señora Pabón Charneco concurre sin opinión escrita. La Jueza Presidenta Oronoz Rodríguez no interviene. El Juez Asociado señor Kolthoff Caraballo no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| MMR Supermarket, Inc.<br><br>Apelada<br><br>v.<br><br>Municipio de San Lorenzo<br><br>Apelante | AC-2020-0036 | |

Opinión de Conformidad emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 21 de julio de 2022.

Coincido con que la Ordenanza en controversia impuso una doble tributación impermisible. Por eso, correspondía confirmar la sentencia del Tribunal de Apelaciones, aunque por fundamentos distintos a los que utilizó ese foro. El análisis estatutario y jurisprudencial bastaba para llegar, en primer lugar, a la conclusión de que MMR Supermarket oportunamente impugnó la aplicación específica de la ordenanza. Esto nos permitía atender correctamente el planteamiento jurisdiccional para así resolver la controversia en sus méritos. Sin embargo, algunos miembros de esta Curia hacen un planteamiento de nulidad para despachar el asunto jurisdiccional a un segundo plano.

Afortunadamente, ateniéndonos al camino correcto, esta vez evitamos desviarnos por esa vía.

Al parecer, se pretende establecer como norma una postura que hemos relegado acoger porque no era -ni es- necesaria. Hasta ahora solo la Opinión de conformidad y disidente en parte de la Jueza Presidenta Oronoz Rodríguez en Reliable Fin. v. ELA, infra, la había adoptado. Tal parece que la Opinión de Conformidad del hermano Juez Asociado señor Rivera García postula que basta con que el promovente de una acción alegue que lo impugnado es inconstitucional y nulo para que no tenga que estar sujeto a término de caducidad alguno. Respetuosamente, opino que no hay razones que justifiquen ese cambio de trato del Tribunal. Este nuevo enfoque -innecesario para resolver la controversia- trastocaría nuestros principios más básicos de derecho. No cabe duda de que antes de entrar a los méritos de una controversia, los tribunales están obligados a examinar si tienen jurisdicción. Esto se encuentra inexorablemente atado al cumplimiento de los requisitos procesales y estatutarios.

I

La Ordenanza 16-OT, Serie 2016-2017 entró en vigor el **31 de marzo de 2017.** Esta tenía el propósito de fijar y cobrar un arbitrio de embellecimiento y ornato a personas o entidades con fines de lucro, basado en el volumen de ingresos. MMR Supermarket tenía un término de 20 días, específicamente hasta el **20 de abril de 2017,** para impugnar

la **aplicación general** de la ordenanza ante el Tribunal de Primera Instancia, cosa que no hizo.

Ahora bien, el **7 de agosto de 2017** el Municipio de San Lorenzo informó a MMR Supermarket, mediante carta, que tenía un balance de $85,022.79 pendiente de pago correspondiente a los arbitrios de la ordenanza. En otras palabras, le aplicó personal y específicamente la ordenanza. Esta notificación de deuda no advirtió el derecho a recurrir al Tribunal de Primera Instancia. Además, del expediente no surge que se haya enviado por correo certificado. Por eso, podemos concluir que **el término de 20 días para impugnar la aplicación específica de la ordenanza no comenzó a transcurrir.**

Con este marco, el 1 de septiembre de 2017 MMR Supermarket presentó una demanda sobre sentencia declaratoria para cuestionar el arbitrio en cuestión. Eventualmente, los foros inferiores correctamente concluyeron que la ordenanza impuso una doble tributación inconstitucional. Ahora bien, este Tribunal tenía la oportunidad de confirmar estas determinaciones y aclarar que MMR Supermarket impugnó oportunamente la aplicación específica de la ordenanza. Es más, para adentrarnos en el análisis de constitucionalidad de la ordenanza **era necesario que despejáramos las dudas sobre si se cumplieron los requisitos estatutarios para revisar judicialmente la ordenanza.**

II

Hemos reiterado que el aspecto jurisdiccional es el primer factor a considerar en toda situación jurídica que se presente ante un foro adjudicativo. <u>Torres Alvarado v. Madera Atiles</u>, 202 DPR 495, 500 (2019). No podemos ignorar que el Art. 15.002 de la Ley de Municipios Autónomos de Puerto Rico, entonces vigente, 21 LPRA sec. 4702, disponía un **término de caducidad de 20 días** para impugnar una ordenanza municipal ante el Tribunal de Primera Instancia. Este término "no permite interrupción, de modo que se logre impartir certeza y finalidad a las actuaciones del gobierno municipal". <u>Mun. de Peñuelas v. Ecosystems, Inc.</u>, 197 DPR 5, 28 (2016). Además, una parte lo puede levantar como defensa e incluso el tribunal debe invocarlo *sua sponte*. <u>Acevedo v. Asamblea Mun. San Juan</u>, 125 DPR 182, 187 (1990).

Claro está, **ese término jurisdiccional aplica en más de un contexto y comienza a decursar en momentos distintos según el tipo de revisión que se pretenda**. Es decir, su punto de partida depende de lo que persigue la revisión. Por un lado, están las acciones que persiguen la suspensión de la ejecución de la ordenanza -Art. 15.002 **(b)**-, y por otro, las acciones que procuran que se dicte que la ordenanza en cuestión no debe aplicarse a la parte actora Art. 15.002**(a)**. Véase, <u>Nogama Const. v. Mun. de Aibonito</u>, 136 DPR 146, 152 (1994).

A tales efectos, el inciso (b) entra en efecto cuando la acción persigue que se suspenda una ordenanza que lesione

derechos constitucionales o estatales. Íd., pág. 153. Un ejemplo de esto es cuando se pretende evitar que se ponga en vigor una ordenanza que sea inconstitucional o contraria a las leyes. Íd. Por otro lado, el inciso (a) aplica cuando la acción solicita la revisión de algún acto o decisión administrativa en virtud de lo dispuesto por una ordenanza. Íd., pág. 152. Por ejemplo, este sería relevante si en un caso particular, **como en el caso de epígrafe,** un funcionario municipal, aplica las disposiciones de una ordenanza a una persona. Íd. Véase, además, HBA Contractors v. Mun. de Ceiba, 166 DPR 443 (2005); Río Const. Corp. v. Mun. de Caguas, 155 DPR 394, 405 (2001).

Nótese que el transcurso del término de caducidad dependerá de si la ordenanza, resolución o acuerdo municipal es de aplicación general o específica. Mun. de Peñuelas v. Ecosystems, Inc., 197 DPR 5, 28 (2016). Cuando se trata de aplicación general, el término comenzará a transcurrir el día siguiente a la fecha de la actuación legislativa o administrativa. Mientras que, si se trata de la aplicación específica e individual de una ordenanza, el término se entiende que **ha comenzado a decursar desde la notificación a la parte afectada por tal actuación.** Íd.

No es la primera vez que nos enfrentamos a situaciones de esta naturaleza. En Nogama Const. v. Mun. de Aibonito, supra, sopesamos nuestra jurisdicción para atender una impugnación de la aplicación de una ordenanza. Precisamente, **al igual que en el caso que nos ocupa hoy,** resolvimos que el

arbitrio impugnado constituía una doble tributación no permitida por la ley. Íd., págs. 155-156. Para llegar a esa determinación aplicamos el equivalente al **inciso (a)** del Art. 15.002 y concluimos que el tribunal tenía jurisdicción porque el término de 20 días comienza a transcurrir desde la notificación de una decisión administrativa final. Íd., pág. 155. Resolvimos que una carta que informó que los libros reflejaban una deuda contributiva no constituía una notificación de deficiencia contributiva. Íd., págs. 154-155. En ese contexto, atendimos los méritos de la controversia porque la notificación no se envió y, por lo tanto, el término no había comenzado a transcurrir.

Luego, en Río Const. Corp. v. Mun. de Caguas, supra, págs. 407-408, reconocimos que el entonces vigente Art. 15.002(a), a pesar de otorgar el derecho de revisión judicial, no disponía el procedimiento aplicable para el ejercicio de ese derecho. Determinamos que el plazo de caducidad -**relacionado con el inciso (a)**- se activaba con la notificación a las partes y/o sus representantes legales por escrito y por correo certificado, con la advertencia de su derecho a recurrir al Tribunal de Primera Instancia dentro del término de 20 días contados a partir de la fecha de depósito en el correo de la determinación administrativa. Íd., págs. 409-410. Ahora estos requisitos están presentes expresamente en el Art. 15.002, supra.

**Así queda claro que la falta de una notificación adecuada de la determinación de la aplicación específica de**

**un arbitrio impide que se active el plazo fatal de caducidad de 20 días. Esto, a su vez, provoca que el tribunal tenga jurisdicción para atender una solicitud de sentencia declaratoria sobre el cobro del arbitrio impuesto mediante una ordenanza.** Véase, Río Const. Corp. v. Mun. de Caguas, supra, pág. 412.

Los hechos de este caso, al aplicar nuestros precedentes, me llevan a concluir que el foro primario tenía jurisdicción para atender la controversia porque el término de 20 días que corresponde a la impugnación de la aplicación específica de una ordenanza -Art. 15.002**(a)**- no comenzó a transcurrir. Recordemos que, por la naturaleza anual del arbitrio, una nueva notificación de deuda para otro año fiscal puede inaugurar un nuevo plazo para impugnar. Esta interpretación reconoce que no tendría sentido impedir que se impugne una ordenanza pasados los 20 días desde que entró en vigor de manera general. Ante ello, la jurisprudencia identificó un **mecanismo alterno para impugnar la ordenanza por su aplicación específica.** Ordinariamente la revisión judicial de una ordenanza se produce a través de pleitos particulares en los que se cuestionan las determinaciones del municipio en un intento concreto de aplicar la ordenanza.

En resumen, MMR Supermarket **impugnó la aplicación específica de la ordenanza.** Debido a que la notificación de deuda no fue adecuada el término para impugnar no comenzó a transcurrir. Así, MMR Supermarket presentó la demanda

oportunamente y el foro primario tenía jurisdicción para atender la controversia.

Este razonamiento era suficiente para llegar al resultado al que llega el Tribunal. Nuestra jurisprudencia, por ejemplo, Nogama, supra, fija el análisis principal cuando se impugna la aplicación particular de una ordenanza municipal. No veo razón para apartarnos de esos lineamientos claros. Contrario a lo que postulan algunos miembros de este Tribunal, **nuestra evaluación sobre los términos de caducidad del Art. 15.002 de la Ley de Municipios Autónomos, supra, no depende enteramente de si se alega que la ordenanza es inconstitucional y, por lo tanto, nula, sino principalmente en cuál es el tipo de impugnación que se presenta.**

En ese sentido, considero que era imprescindible resolver primero el asunto jurisdiccional de la controversia. Contrario a esto, algunos compañeros Jueces prefieren atender el asunto jurisdiccional en un segundo plano y bajo un marco incompleto. Es decir, primero razonan que la ordenanza en controversia era nula *ab initio* y luego utilizan ese fundamento para expresar que era irrelevante dilucidar los argumentos jurisdiccionales. Con eso, tratan de alterar el orden medular para atender una cuestión jurisdiccional y lo reducen a las alegaciones sobre inconstitucionalidad.

Es correcto que en Ríos v. Municipio Isabela, 159 DPR 839, 849 (2003), afirmamos que el término de caducidad del Art. 15.002 de la Ley de Municipios Autónomos, supra, no

puede tener el efecto de convalidar contratos nulos, ni de frenar un decreto de inexistencia de contrato. Ahora bien, no saquemos de contexto esa expresión. Allí, examinamos que la propia Ley de Municipios Autónomos pautaba que un contrato municipal que no cumpliera con los requisitos estatutarios era nulo y quedaría sin efecto. Íd., pág. 847. Sin embargo, una ordenanza pretendía legalizarlo y encubrir así la nulidad de un acuerdo ilegal. Íd., pág. 849. En el litigio lo que se cuestionaba era el contrato y no la ordenanza. Esto es distinto a la controversia de hoy. **Aquí no hay una acción nula previa que se tratara de encubrir por medio de la ordenanza ya que lo que se cuestiona es esta última**. Aquí se cuestiona una ordenanza y no un contrato.

Cuando lo que se cuestiona es una ordenanza, expresamos en Reliable Fin. v. ELA, 197 DPR 289, 310 (2017), que "el hecho de tratarse de una acción impugnatoria **no** exime a la parte promovente de cumplir con **todos** los términos y exigencias aplicables al trámite judicial…". (Énfasis en el original). **Las ordenanzas no son nulas automáticamente porque una parte así lo reclame. Su nulidad depende de una determinación judicial en un proceso oportuno de impugnación**. Es decir, la nulidad es contingente a que la parte afectada acuda a un tribunal con jurisdicción, con argumentos válidos que justifiquen su reclamo. Véase, Íd.

En vista de que una ordenanza municipal no se presume nula, el tribunal, **luego de constatar que cuenta con jurisdicción** sobre el asunto, puede dilucidar su

constitucionalidad. La controversia de epígrafe requería un análisis de dos partes: (1) lo concerniente a lo jurisdiccional, y (2) la validez de la ordenanza. Sin embargo, algunos Jueces hermanos no hicieron un análisis completo del asunto jurisdiccional.

No debemos avalar un razonamiento que tenga el efecto de que todo lo que se alega nulo, se presume nulo respecto a requisitos procesales. Particularmente, no debería crearse una norma de que las ordenanzas municipales se presuman nulas y que su impugnación no esté sujeta a término alguno. Si según el criterio de la parte promovente una ordenanza es nula, comoquiera tiene que cumplir con los procedimientos y términos que establece la ley. **Nuestra jurisdicción nunca depende del posible resultado del pleito.**

No podemos ignorar los requisitos procesales, como el de notificación, forma, aranceles, entre otros, a los que está sujeta nuestra revisión, incluso en el ámbito de asuntos constitucionales. ¿Acaso los términos para apelar no aplican en cuestiones constitucionales? ¿Tampoco aplican cuando se alega que una actuación, ley u ordenanza es nula?

A modo ilustrativo, nótese que la Regla 18 de nuestro Reglamento, 4 LPRA Ap. XXI-B, recoge que el apelante de una sentencia de inconstitucionalidad de una ordenanza municipal deberá cumplir con los términos para instar el recurso de apelación. Véanse, Regla 52 de Procedimiento Civil, 32 LPRA Ap. V; Regla 17 del Reglamento del Tribunal Supremo, supra. Aunque se trate de una impugnación de constitucionalidad,

nuestra jurisdicción está sujeta a que las partes acudan ante nos oportunamente. Si no apela a tiempo, no se resuelven los méritos acerca de la constitucionalidad de la legislación atacada. En este caso, debíamos resolver que se impugnó la ordenanza dentro del término para ello.

III

Por todo lo anterior, resulta evidente que -por virtud del Art. 15.002**(a)**, supra- MMR Supermarket cuestionó oportunamente la aplicación de la ordenanza en controversia. De ese modo, el foro primario tenía jurisdicción para atender la controversia y resolver que la ordenanza impuso una doble tributación impermisible. Este razonamiento era indispensable para que este Tribunal dispusiera correctamente del asunto. Es decir, **era imprescindible evaluar los términos de caducidad del Art. 15.002 de la Ley de Municipios Autónomos, supra, indistintamente de que se alegara que la ordenanza era nula.** Como ciertos miembros de esta Curia prefieren cambiar nuestros pronunciamientos previos en lugar de resolver por este fundamento, me veo obligado a explicar mi conformidad con la determinación a la que hoy llegamos. Así, evitamos atajos que nos lleven a confundir doctrinas.

No hay una razón válida en derecho para que el análisis jurisdiccional correcto se soslayara. Por eso, coincido en confirmar la Sentencia que declaró inconstitucional la ordenanza en cuestión, mas no así con el fundamento

incompleto y deficiente que algunos utilizan para despachar la controversia jurisdiccional.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| MMR Supermarket, Inc.<br><br>Apelado<br><br><br>v.<br><br><br>Municipio Autónomo de San Lorenzo, Honorable José Román Abreu<br><br>Apelante | AC-2020-0036 | *Apelación* |

**Opinión de Conformidad emitida por el Juez Asociado señor Rivera García a la cual se le unen los Jueces Asociados señores Feliberti Cintrón, Estrella Martínez y Colón Pérez.**

En San Juan, Puerto Rico, a 21 de julio de 2022.

En esta ocasión, tenemos la oportunidad de auscultar la constitucionalidad de la Ordenanza 16-OT, Serie 2016-2017, emitida por el Municipio Autónomo de San Lorenzo, sobre un arbitrio destinado al embellecimiento, ornato, y reciclaje. Esto, por acarrear un aumento ilegal en la tasa contributiva del impuesto municipal aplicable al volumen de negocios, conocido como la "Patente Municipal".

Con el aval de una mayoría de este Tribunal, declaramos la inconstitucionalidad de la Ordenanza ante la actuación *ultra vires* del Municipio de San Lorenzo. A tal efecto, este excedió de las facultades delegadas por la Asamblea Legislativa a los municipios en clara

contravención al poder conferido por nuestra Constitución. Lamentablemente, pese a existir una voluntad **unánime** para declarar la inconstitucionalidad de la actuación municipal, no fue posible emitir una Opinión mayoritaria. Esto, por motivo de una divergencia de criterios sobre un aspecto jurisdiccional que **no afecta la controversia medular de este recurso**. Veamos.

I

El 17 de marzo de 2017 el Municipio Autónomo de San Lorenzo (Municipio o apelante) aprobó la Ordenanza 16-OT, Serie 2016-2017 (Ordenanza).[1] Mediante esta, le impuso a todas las personas naturales y jurídicas que se dedicaban a actividades con fines de lucro dentro del Municipio un arbitrio sobre embellecimiento, ornato y reciclaje. Consecuentemente, el 7 de agosto de 2017 el Municipio le remitió un comunicado a MMR Supermarket, Inc. (MMR o apelada) para informarle que tenía un balance pendiente de pago por $85,002.79 con relación a los nuevos arbitrios establecidos mediante la Ordenanza.[2]

Ante ello, el 1 de septiembre de 2017, MMR instó una *Demanda* contra el Municipio y su alcalde, el Honorable José Román Abreu.[3] En esencia, argumentó que el arbitrio tuvo el efecto de aumentar la tasa contributiva sobre el volumen de negocio, lo cual constituyó una doble

---

[1] Apéndice del recurso de Apelación, *Ordenanza Municipal Arbitrio Embellecimiento y Ornato MSL*, págs. 396-397.
[2] Apéndice del recurso de Apelación, *Comunicado sobre Requerimiento de pago*, pág. 395.
[3] Apéndice del recurso de Apelación, *Demanda*, págs. 377-391.

tributación ilegal. Adujo, que el Municipio pretende imponer un **aumento de cero punto veinte y cinco por ciento (0.25%) adicional a la tasa máxima de cero punto cinco por ciento (0.50%) de la patente municipal autorizada por la sección 5(b) de la Ley de Patentes Municipales**, Ley Núm. 113 de 10 de julio de 1974, según enmendada.[4] A tal efecto, **arguyó que esta nueva Ordenanza constituye una doble tributación sobre el mismo evento económico, es decir el volumen del negocio**.[5] De este modo, le solicitó al foro primario que emitiera una *sentencia declaratoria* por entender que la Ordenanza es inconstitucional; y, a su vez, que le ordenara al Municipio el cese del cobro del impuesto.[6]

Luego de varias incidencias procesales, el 24 de abril de 2018 el **foro primario** emitió una *Sentencia* en la que declaró nula *ab initio* la Ordenanza por el Municipio por carecer de autoridad para imponer el arbitrio.[7] Concluyó, que un acto inexistente nunca podrá ser convalidado, ni siquiera mediante la aprobación de una resolución municipal.[8] En torno a la postura del Municipio sobre el término de caducidad para solicitar la

---

[4] Apéndice del recurso de Apelación, *Demanda*, pág. 378. Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974, según enmendada, y derogada, 21 LPRA sec. 651d.

[5] La apelada adujo que para el año 2016 aportó al erario del Municipio $155,119.70 por concepto de la patente municipal. Así, la imposición de la Ordenanza acarrea que MMR tenga que realizar un pago por $77,559.85 además del emitido mediante patente municipal.

[6] R. 59.2(a), 32 LPRA Ap. III.

[7] Apéndice del recurso de Apelación, *Sentencia*, págs. 105-109.

[8] *Brown v. Junta de Directores Condominio Playa Grande*, 154 DPR 225 (2001); *Ríos v. Municipio de Isabela*, 159 DPR 839 (2003).

revisión judicial de la Ordenanza, **el Tribunal de Primera Instancia expuso lo siguiente**:

> Aquí no se trata de que la Ordenanza municipal lesiona derechos legales o constitucionales, para lo que es el procedimiento de revisión judicial que contempla el Artículo 15.002 de la Ley de Municipios Autónomos. […] El mero transcurso del tiempo no puede investir en la demandada una facultad que ni la Constitución ni la Asamblea Legislativa le otorgaron. Sencillamente estamos ante un acto nulo e inexistente.[9]

Posteriormente, el Tribunal de Primera Instancia dejó sin efecto la *Sentencia* previamente emitida el 24 de abril de 2018 y señaló una vista evidenciaria con el fin de que el Municipio tuviese la oportunidad de presentar prueba sobre su presunta facultad legal para imponer y cobrar el arbitrio.[10] Añadió que, la *Solicitud de Desestimación* presentada por el Municipio estaba atada a la facultad legal que tuviera este último para imponer el tributo.[11] Además, esbozó que el mero transcurso del tiempo no puede conferirle a los municipios aquellas facultades que ni la Constitución, ni la Asamblea Legislativa, les concedieron.

Luego de celebrada la vista evidenciaria, el 14 de agosto de 2019, el **foro primario** emitió *Sentencia* en virtud de la cual determinó que el Municipio, mediante la

---

[9] Apéndice del recurso de Apelación, *Sentencia*, pág. 108.
[10] Apéndice del recurso de Apelación, *Resolución*, págs. 79-80. La vista evidenciaria fue celebrada el 10 de julio de 2019, donde el único testigo del apelante fue el señor Pedro González Rodríguez, director de finanzas del Municipio.
[11] Apéndice del recurso de Apelación, *Solicitud de Desestimación*, págs. 367-376.

aprobación de la Ordenanza, impuso un arbitrio sobre el volumen del negocio en exceso del máximo permitido por ley.[12] De este modo, **determinó que la Ordenanza es nula *ab initio* por violentar las disposiciones legales establecidas en la Ley de Patentes Municipales, *supra*, al imponer un arbitrio adicional sobre el mismo volumen de negocio que sirve de base para calcular e imponer el pago de estas.**[13] A su vez, invalidó el planteamiento del Municipio sobre la caducidad del término dispuesto en el Artículo 15.002 de la Ley de Municipios Autónomos, *supra*, para impugnar la Ordenanza.

A la luz de ello, determinó que "**[c]oncluir lo contrario sería derrotar la disposición constitucional que prohíbe a los municipios imponer y cobrar arbitrios que trasciendan la autoridad que les fue delegada por la Asamblea Legislativa**".[14] Además, señaló nuevamente que, **sencillamente estamos ante un acto nulo e inexistente el cual no puede ser convalidado, ni siquiera mediante la aprobación de una resolución municipal.**[15]

Inconforme con este dictamen, el 15 de octubre de 2019 el Municipio instó un recurso de Apelación ante el Tribunal de Apelaciones.[16] En esencia, arguyó que el foro primario carecía de jurisdicción para entrar a dilucidar

---

[12] Apéndice del recurso de Apelación, *Sentencia*, págs. 63-71.
[13] Apéndice del recurso de Apelación, *Sentencia*, págs. 106-109.
[14] Apéndice del recurso de Apelación, *Sentencia*, pág. 68.
[15] Íd. *Brown v. Junta de Directores Condominio Playa Grande*, *supra*; *Ríos v. Municipio de Isabela*, supra.
[16] Apéndice de la petición de Apelación, *Recurso de Apelación-Tribunal de Apelaciones*, págs. 42-62.

la constitucionalidad de la Ordenanza. Esto, ante el hecho de que la apelada impugnó a destiempo la misma. Es decir, luego de transcurrido el término de caducidad de veinte (20) días. De este modo, solicitó la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia. Por otro lado, MMR presentó su *Alegato en Oposición de la Parte Apelada*.[17] Mediante este, esbozó los argumentos previamente plasmados en torno a la nulidad e inconstitucionalidad de la Ordenanza.

Luego de examinar las posturas de ambas partes, el 18 de febrero de 2020, **el foro intermedio emitió una *Sentencia* mediante la cual confirmó la determinación del foro primario.**[18] A tal efecto, expuso que la ordenanza no puede prevalecer, pues conflige directamente con la Ley de Patentes Municipales, *supra*. Añadió, que la aprobación de la Ordenanza **"simple y sencillamente constituye un acto que viola el mandato constitucional que otorga a la Asamblea Legislativa el poder exclusivo sobre el cobro de contribuciones, salvo delegación expresa".**[19] En ese sentido, concluyó que no se le puede conferir legalidad a un término de caducidad sobre revisión judicial ante la presencia de un acto que no existe, es decir, nulo.[20]

---

[17] Apéndice de la petición de Apelación, *Alegato en Oposición de la Parte Apelada,* págs. 25-41.

[18] Apéndice de la petición de Apelación, *Sentencia* del Tribunal de Apelaciones, págs. 10-24.

[19] Íd.

[20] Asimismo, esbozó que avalar la postura del apelante implicaría negarles a las partes afectadas por una Ordenanza municipal la oportunidad de impugnar su constitucionalidad. De este modo, dispuso que "[t]oda vez que la aprobación del arbitrio fue nula desde su inicio, el acto no tuvo consecuencias jurídicas". Por ello,

Inconforme aún, el 15 de julio de 2020, el Municipio acudió ante nos mediante un recurso de Apelación. En virtud de este, señaló el error siguiente:

> Erró manifiestamente el Tribunal de Apelaciones al no desestimar la Demanda del epígrafe, que fue presentada expirado el término de caducidad dispuesto en ley para ello, y en su lugar, entrar a dirimir de forma prematura y sin jurisdicción los méritos de una Ordenanza Municipal y decretar su inconstitucionalidad en abierta inconsistencia y conflicto con una Sentencia previa del Tribunal de Apelaciones sobre la misma controversia, la misma Ordenanza y la misma parte demandada.

En esencia, el apelante nos solicita que revoquemos la *Sentencia* emitida por el foro intermedio, la cual tuvo el efecto de declarar inconstitucional la Ordenanza Municipal.[21] En específico, argumenta que el foro primario estaba impedido de entrar a dirimir la constitucionalidad de la Ordenanza, toda vez que MMR solicitó la revisión judicial de esta fuera del término de caducidad de veinte (20) días que establece el Artículo 15.002 de la Ley de Municipios Autónomos, *supra*. Por lo cual, el Tribunal de Primera Instancia actuó sin jurisdicción.

Por su parte, el 1 de julio de 2021, MMR presentó su *Alegato de la Parte Apelada*. En virtud de este, adujo que

---

determinó que el término provisto en el Artículo 15.002 de la Ley de Patentes Municipales, supra, no es de aplicación, pue se trata de una acción que nunca nació y tuvo eficacia jurídica. Por consiguiente, concluyó que al no entrar en vigor la Ordenanza debido a su nulidad, esta no se encuentra restricta al término jurisdiccional para promover su impugnación.

[21] El apelante expuso que la determinación del foro intermedio se apartó de lo resuelto en Ethicon, LLC v. Municipio Autónomo de San Lorenzo, E2CI201700198, 2018 WL 3868949, KLCE201800362. Esto, en lo que respecta al término de caducidad provisto por la Ley de Municipios Autónomos de Puerto Rico, *supra*, para llevar a cabo la impugnación de una Ordenanza Municipal.

en la medida en que el Municipio utilizó la patente municipal como base para el cómputo del nuevo arbitrio, es decir la mitad de lo que sea mayor entre el pago de la patente municipal emitida para el año natural 2015 o el pago de la patente del año corriente, **este excedió la facultad delegada por la Asamblea Legislativa en clara contravención a lo dispuesto a la Ley de Patentes Municipales,** *supra*. **Además, esbozó que, de sostenerse la validez de la Ordenanza, esta tendría que pagar 0.50% del pago regular de la patente más la mitad de dicho pago, equivalente a un total de 0.75%. Acto que, arguye, constituye una doble tributación vedada por nuestro ordenamiento jurídico.**

Asimismo, argumentó que dicha actuación es nula *ab initio* por carecer el Municipio de autoridad para imponer el arbitrio en exceso del porcentaje ya establecido. De este modo, adujo nuevamente que el mero paso del tiempo no puede tener el efecto de convalidar un acto inexistente ni investir en el Municipio una facultad que ni la Constitución ni la Asamblea Legislativa le han otorgado. Por último, el apelado recalcó que esta Curia en Ríos v. Municipio de Isabela, 159 DPR 839 (2003), resolvió que **resulta inmaterial** profundizar sobre el término de caducidad de veinte días para solicitar una impugnación municipal. Más aún, cuando el fin es convalidar un acto nulo. Asimismo, indicó que este Tribunal reiteró, **que la acción para decretar la**

**inexistencia de un contrato nunca prescribe y que, por consiguiente, no hay punto de partida para contar término de prescripción alguno.**[22] Por último, MMR concluyó que "el término de caducidad que dispone el Art. 15.002, ante, **no puede tener el efecto de frenar un decreto de inexistencia de contrato y, mucho menos, puede convertirse en subterfugio para convalidar contratos nulos**".[23] "Ciertamente, el término de caducidad que dispone el Art. 15.002, ante, **no puede tener el efecto de frenar un decreto de inexistencia de contrato y, mucho menos, puede convertirse en subterfugio para convalidar contratos nulos**".[24]

Atendido y perfeccionado el recurso ante nuestra consideración, y con el beneficio de la comparecencia de ambas, procedo.

## II

**A. Jurisdicción para declarar la inconstitucionalidad de una Ordenanza Municipal**

Es norma reiterada que los tribunales tenemos la obligación de ser guardianes de nuestra propia jurisdicción, pues esta es la facultad que nos permite entrar a resolver los méritos de una controversia traída ante nuestra consideración.[25] Debido a su importancia, el

---

[22] *Ríos v. Municipio de Isabela*, supra.
[23] Íd.
[24] Íd.
[25] *Allied Management Group, Inc. v. Oriental Bank*, 204 DPR 374, 385 (2020); *Cordero et al. v. A.R.Pe. et al.*, 187 DPR 445, 457 (2012).

asunto sobre la jurisdicción al ser uno privilegiado debe ser resuelto con premura.[26] A tal efecto, un tribunal que carece de jurisdicción únicamente está limitado a así declararlo.[27]

De ese modo, hemos reiterado que los tribunales no tienen discreción para asumir jurisdicción donde no la hay.[28] Ante ello, es un deber ministerial de todo tribunal evaluar de antemano si posee jurisdicción, pues ello incide directamente sobre el poder para adjudicar una controversia.[29] Por consiguiente, esta Curia ha expresado en múltiples instancias que "[u]na apelación o un recurso prematuro, al igual que uno tardío, sencillamente adolece del grave e insubsanable defecto de falta de jurisdicción".[30] A tal efecto, "su presentación carece de eficacia y no produce ningún efecto jurídico, pues no hay autoridad judicial para acogerlo".[31]

Ahora bien, en torno al decreto de inconstitucionalidad de una ley, nuestra Constitución en virtud del Artículo V, sección 4 dispone que "[n]inguna ley se declarará inconstitucional a no ser por una mayoría del número total de los jueces de que esté compuesto el tribunal de acuerdo con esta Constitución o

---

[26] *Allied Management Group, Inc. v. Oriental Bank*, supra, pág. 386.
[27] Íd.
[28] *Peerless Oil v. Hermanos Pérez*, 186 DPR 239, 250 (2012).
[29] *Allied Management Group, Inc. v. Oriental Bank*, supra, pág. 386.
[30] *Peerless Oil v. Hermanos Pérez*, supra.
[31] *Juliá et al. v. Epifanio Vidal, S.E.*, 153 DPR 357, 365 (2001).

con la ley".[32] Por otro lado, la Ley de Municipios Autónomos, *supra*, faculta tanto al Tribunal de Primera Instancia como al Tribunal de Apelaciones a "[s]uspender la ejecución de cualquier ordenanza, resolución, acuerdo u orden de la legislatura, del alcalde o de cualquier funcionario del municipio que lesione derechos garantizados por la Constitución del Estado".[33]

## B. Constitucionalidad de la Ordenanza Municipal sobre imposición de Arbitrios

El Artículo VI, Sección 1 de la Constitución del Estado Libre Asociado de Puerto Rico le confiere a la Asamblea Legislativa el poder para crear municipios y determinar lo concerniente a su autoridad y funcionamiento.[34] También, le confiere el poder de "crear, suprimir, consolidar y reorganizar municipios, modificar sus límites territoriales y determinar lo relativo a su régimen y función".[35] En ese sentido, la Sección 2 del Artículo VI de nuestra Constitución establece que "[e]l poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido".[36]

---

[32] Art. V. Sec. 4 Const. ELA, 1 LPRA; *P.I.P. v. E.L.A.*, 186 DPR 1 (2012).

[33] 21 LPRA sec. 4702 (derogada).

[34] Art. VI, Sec. 1, Const. ELA, 1 LPRA.

[35] Íd; *Cía Turismo de P.R. v. Mun. de Vieques*, 179 DPR 578, 584, (2010).

[36] Art. VI, Sec. 2, Const. ELA, 1 LPRA; *Cía Turismo de P.R. v. Mun. de Vieques*, supra; *Interior Developers v. Mun. de San Juan*, 177 DPR 693 (2009).

Es norma reiterada que, **la facultad del Estado "para imponer contribuciones puede ser delegada a los municipios mediante un mandato claro y expreso, pues éstos no tienen un poder inherente e independiente para imponerlas"**.[37] Por consiguiente, esta facultad radica exclusivamente en la Asamblea Legislativa, a pesar de su naturaleza amplia y abarcadora.[38] Ante ello, **debe quedar meridianamente claro que todo municipio carece del poder inherente de imponer tributos.**[39] **No obstante, dicha facultad se activa si así expresamente lo dispone la Asamblea Legislativa.**[40]

Cónsono con el poder delegado, la Asamblea Legislativa promulgó la **Ley de Municipios Autónomos de Puerto Rico**, Ley Núm. 81 de 30 de agosto de 1991, según enmendada,[41] con el fin de que, mediante la imposición de tributos, los municipios puedan recaudar fondos para así satisfacer sus necesidades y brindarle los servicios necesarios a sus habitantes.[42] De tal modo, estas entidades gubernamentales son células básicas de nuestro complejo tejido social, político y económico.[43] Por

---

[37] *Cía Turismo de P.R. v. Mun. de Vieques*, supra; *Interior Developers v. Mun. de San Juan*, supra.

[38] *Café Rico, Inc. v. Mun. de Mayagüez*, 155 DPR 548 (2001).

[39] *Levy, Hijo, Inc. v. Municipio de Manatí*, 151 DPR 292 (2000).

[40] *Const. José Carro v. Mun. Dorado*, 186 DPR 113 (2012).

[41] 21 LPRA sec. 4052, derogada en la actualidad por la Ley 107-2020 conocida como el *Código Municipal de Puerto Rico*, pero vigente al momento de los hechos del presente caso. *Cía Turismo de P.R. v. Mun. de Vieques*, supra.

[42] *Pfizer Pharm v. Mun. de Vega Baja*, 182 DPR 267 (2011); *Aireko Const. Corp. v. Mun. de Utuado*, 176 DPR 897 (2009).

[43] *Pacheco Fraticelli v. Cintrón Antonsanti*, 122 DPR 229, 236 (1988).

consiguiente, "[s]u intervención con la persona y la vida comunitaria parece intensificarse".[44]

En específico, la Ley de Municipios Autónomos, *supra*, disponía que los municipios podrán "[i]mponer y cobrar contribuciones, derechos, licencias, arbitrios de construcción y otros arbitrios e impuestos, tasas y tarifas razonables dentro de los límites territoriales del municipio, compatibles con el Código de Rentas Internas y las leyes del Estado Libre Asociado de Puerto Rico".[45] De este modo, **la ley que imponga el pago de contribuciones se interpretará de manera restrictiva en contra del Estado y a favor del ciudadano; solo cuando esta última no contenga un lenguaje claro o acarree ambigüedad.**[46]

En consonancia con lo antes expuesto, la sección 1.006(b)(4) de la precitada ley hace énfasis en que "los municipios quedan investidos de la autoridad para imponer contribuciones en aquellos asuntos en que el Gobierno Central no tenga el campo ocupado de conformidad con la sec. 4052 de este título".[47] De esta manera, se reconoce la autonomía de todo municipio, como entidad del Gobierno local, en el orden jurídico, económico y

---

[44] Íd.

[45] 21 LPRA sec. 4052 (derogada). *Cía Turismo de P.R. v. Mun. de Vieques*, supra.

[46] *Lázaro Rodríguez v. Depto. Hacienda*, 200 DPR 954, 967-68 (2018).

[47] 21 LPRA sec. 4004, derogada. *Cía Turismo de P.R. v. Mun. de Vieques*, supra.

administrativo.[48] En ese sentido, "[s]u autonomía está subordinada y será ejercida de acuerdo a la Constitución del Estado Libre Asociado de Puerto Rico y de esta ley".[49]

Así pues, con el propósito de que los municipios tengan una robusta base económica y sean auto sustentables, la Asamblea Legislativa en virtud de la Ley de Municipios Autónomos, *supra*, promulgó la **Ley de Patentes Municipales de Puerto Rico**, Ley Núm. 113 de 10 de julio de 1974, según enmendada.[50] Asimismo, esta favorece la ampliación de los poderes de los municipios, de forma que éstos puedan proveer más servicios directos a la ciudadanía.[51] De esta forma, el gobierno estableció los arbitrios que por concepto de patente un municipio le puede imponer a toda persona natural o jurídica que se dedique a la prestación de cualquier servicio, o a la venta de cualquier bien, negocio financiero o cualquier industria o negocio, excepto lo que en otro sentido se disponga, dentro de sus límites territoriales.[52]

A tal efecto, a pesar de que la patente es un permiso para llevar a cabo una actividad económica, de lo que se trata es de un **impuesto conforme al volumen de**

---

[48] 21 LPRA sec. 4003 (derogada).
[49] Íd.
[50] 21 LPRA sec. 651, derogada en la actualidad por la Ley 107-2020, conocida como el *Código Municipal de Puerto Rico*, pero vigente al momento de los hechos del presente caso.
[51] Íd.
[52] Íd., sec. 651b y 651c (derogada).

**negocio.**[53] De este modo, la Ley de Patentes, *supra*, lo define de la siguiente manera:

> **(i) Volumen de Negocios.** — significa los ingresos brutos que se reciben o se devengan por la prestación de cualquier servicio, por la venta de cualquier bien, o por cualquier otra industria o negocio en el municipio donde la casa principal realiza sus operaciones, o los ingresos brutos que se reciban o devenguen por la casa principal en el municipio donde esta mantenga oficinas o donde realice ventas ocasionales y para ello mantenga un lugar temporero de negocios y almacenes, sucursales, planta de manufactura, envase, embotellado, procesamiento, elaboración, confección, ensamblaje, extracción, lugar de construcción, o cualquier otro tipo de organización, industria o negocio para realizar negocios a su nombre, sin tener en cuenta sus ganancias o beneficios. [...][54]

A esos fines, la Ley de Patentes, *supra*, establece lo siguiente sobre el porcentaje que los municipios están autorizados a cobrar por concepto de patente municipal:

> **(b)** Excepto para los años fiscales indicados en la Sección 11 de esta ley, **se le impondrá y cobrará a toda persona dedicada a la prestación de cualquier servicio, a la venta de cualquier bien o a cualquier industria o negocio no comprendido bajo el inciso (a) de esta sección, una patente que en ningún caso podrá exceder de cincuenta centésimas (.50) del uno por ciento (1%) de su volumen de negocio atribuible a operaciones en el municipio que impone la patente autorizada**, excepto cuando de otro modo se disponga en esta ley.[55]

A modo ilustrativo, resaltamos que recientemente nuestra Asamblea Legislativa promulgó la Ley Núm. 107 de 14 de agosto de 2020, según enmendada, conocida como el

---

[53] *Lukoil Pan Americas v. Mun. Guayanilla*, 192 DPR 879, 908 (2015).

[54] 21 LPRA sec. 651a (derogada).

[55] Íd., sec. 651d (derogada).

**"Código Municipal de Puerto Rico";**[56] a los fines de integrar, organizar y actualizar las leyes aplicables a la organización, administración y funcionamiento de los municipios. A su vez, con el propósito de añadir nuevos modelos procesales para la consecución de mayor autonomía para estos. De tal manera, que el ordenamiento jurídico esté en sintonía con las necesidades de cada municipio y en pro del bienestar del pueblo, para aspirar al logro de la verdadera autonomía municipal que se ha teorizado desde finales del Siglo XV.[57]

En lo concerniente al caso traído ante nuestra consideración, y en lo que nos concierne sobre la facultad delegada a los municipios para la imposición de arbitrios, **la intención legislativa** bajo el actual estatuto mantuvo vigente la recaudación por concepto de patentes como parte de las fuentes de ingreso de un municipio.[58] Igualmente, la precitada ley autoriza a los municipios mediante la facultad delegada por la Asamblea Legislativa a imponer el arbitrio de las patentes.[59] Así las cosas, se encuentra sujeta al pago de patentes "toda persona dedicada a la prestación de cualquier servicio con fines de lucro, a la venta de cualquier bien, a cualquier negocio financiero o a cualquier industria o

---

[56] El Código Municipal de Puerto Rico tuvo el efecto de derogar la Ley de Municipios Autónomos de Puerto Rico, *supra*, y la Ley de Patentes Municipales de Puerto Rico, *supra*.
[57] Exposición de Motivos de la Ley Núm. 107 de 14 de agosto de 2020, según enmendada.
[58] 21 LPRA sec. 7292.
[59] Íd., sec. 8161.

negocio en los municipios del Gobierno de Puerto Rico, excepto cuando de otro modo se disponga en dichas secciones".[60] Asimismo, dispone lo siguiente:

> **(b)** Excepto para los años fiscales indicados en este Capítulo, **se le impondrá y cobrará a toda persona dedicada a la prestación de cualquier servicio, a la venta de cualquier bien o a cualquier industria o negocio no comprendido bajo el inciso (a) de este Artículo, una patente que en ningún caso podrá exceder de cincuenta centésimas (.50) del uno por ciento (1%) de su volumen de negocio atribuible a operaciones en el municipio que impone la patente autorizada**, excepto cuando de otro modo se disponga en este Código.[61]

En ese sentido, cónsono con la facultad delegada a los municipios para regular su actividad económica, los tribunales, como norma general, no deben intervenir por tratarse en esencia de una función principalmente legislativa.[62] Sin embargo, cuando su intervención sea requerida, **estos tienen que considerar las características del arbitrio y los elementos del evento que provoca la obligación tributaria**.[63] En torno al origen y razón de ser sobre la imposición de un arbitrio, esta Curia previamente ha expresado al respecto lo siguiente:

> El hecho imponible es posiblemente el aspecto más importante de los que configuran un tributo, incluso podría decirse que es su esencia misma. Éste se define como el presupuesto de hecho, fijado en la ley o fuente legal que crea el tributo, cuya realización conlleva el nacimiento de la obligación tributaria. De no configurarse el hecho imponible, no nace la obligación tributaria.

---

[60] Íd., sec. 8163.
[61] Íd., sec. 8164.
[62] *Pfizer Pharm. v. Municipio de Vega Baja*, supra.
[63] Íd.

**Por ello, antes de evaluar la validez de un tributo es vital determinar cuáles son sus elementos.**[64]

Cónsono con lo antes expuesto, la **doble tributación** se configura cuando "recaen dos (2) impuestos sobre un mismo evento económico".[65] A pesar de que no existe una prohibición constitucional sobre la existencia de una doble tributación, esta solo se permite cuando hay una "clara y explícita" intención legislativa.[66] Esta Curia ha expresado que existe una doble tributación cuando se configuran los siguientes requisitos: a) la misma propiedad; b) por la misma entidad gubernamental; c) por el mismo periodo contributivo; y d) para el mismo fin.[67]

De este modo, ante la importancia de analizar los motivos derivados de la actuación municipal, los tribunales deben determinar: 1) quién es el contribuyente; 2) cómo se calcula el impuesto; 3) cuál es la tasa aplicable; y 4) cómo se cobra el impuesto.[68] En este contexto, "al realizar este análisis, debemos recordar que **'para determinar la legalidad de una contribución, no es relevante su forma, nombre o definición, sino su efecto práctico y consecuencias en su**

---

[64] *Cía de Turismo de P.R. v. Mun. de Vieques*, supra, pág. 585; *Interior Developers v. Mun. de San Juan*, supra, que cita a A. Martínez Lafuente, *Derecho tributario: estudios sobre la jurisprudencia tributaria*, Madrid, Ed. Civitas, 1985, págs. 207-215.

[65] *Cía de Turismo de P.R. v. Mun. de Vieques*, supra, pág. 598.

[66] Íd., pág. 599.

[67] Íd.

[68] Íd., pág. 586.

**aplicación y funcionamiento'"**.[69] A esos fines, esta Curia

ha expresado al respecto de la siguiente manera:

> **el nombre que se le da a una contribución carece de importancia, y la verdadera naturaleza de la misma se fija más bien por su incidencia**; y que cuando está en controversia el hecho de si una contribución contraviene derechos constitucionales garantizados, no es la forma de la misma, ni su definición o interpretación lo que hace el caso, **sino el efecto práctico o las consecuencias de dicha contribución como cuestión de realidad, en su aplicación y funcionamiento**".[70]

Por consiguiente, "salvo que otra cosa se disponga

mediante ley o reglamentación, la Legislatura Municipal

queda revestida del poder de aprobar aquellas ordenanzas

necesarias para promover y adelantar su propia política

pública, **siempre y cuando la misma no contravenga la**

**política pública establecida por el Estado**".[71] A tal

efecto, "[t]oda ordenanza municipal regulatoria tiene que

estar en **armonía con el ordenamiento estatal**, el cual ha

de prevalecer en situaciones conflictivas".[72]

**C. Término para impugnar una Ordenanza Municipal**

La Ley de Municipios Autónomos, *supra*, vigente al

momento de los hechos del presente caso, establece la

forma en que las ordenanzas y resoluciones de estos

cobran eficacia jurídica.[73] Además, provee el mecanismo a

implementarse cuando se solicita la revisión de alguna

---

[69] Íd.
[70] Íd.
[71] *Mun. de Peñuelas v. Ecosystems, Inc.*, 197 DPR 5, 23 (2016).
[72] Íd.
[73] Íd.

actuación legislativa municipal.[74] En ese sentido, para llevar a cabo la **impugnación de una Ordenanza Municipal**, la Ley de Municipios Autónomos, *supra*, dispone lo siguiente:

> **(1)** El Tribunal de Primera Instancia de Puerto Rico entenderá y resolverá, con exclusividad, a instancias de la parte perjudicada, sobre los siguientes asuntos:
>
> (a) Revisar cualquier acto legislativo o administrativo de cualquier funcionario u organismo municipal que lesione derechos constitucionales de los querellantes o que sea contrario a las leyes de Puerto Rico.
>
> **(b) Suspender la ejecución de cualquier ordenanza, resolución, acuerdo u orden de la legislatura, del alcalde o de cualquier funcionario del municipio que lesione derechos garantizados por la Constitución del Estado Libre Asociado de Puerto Rico o por las leyes estatales.**
>
> […]
>
> En los casos contemplados bajo las cláusulas **(a) y (b)** de este inciso, **la acción judicial sólo podrá instarse dentro de los veinte (20) días siguientes a la fecha en que el acto legislativo o administrativo se haya realizado o que la ordenanza, resolución, acuerdo u orden se haya notificado por el alcalde o funcionario municipal autorizado a la parte querellante por escrito mediante copia y por correo regular y certificado a menos que se disponga otra cosa por ley.**
>
> Disponiéndose, que el término de veinte (20) días establecido en este Artículo comenzará a decursar a partir del depósito en el correo de dicha notificación; y que la misma deberá incluir, pero sin ser limitativo, el derecho de la parte afectada a recurrir al Tribunal de Primera Instancia, Sala Superior competente; término para apelar la decisión; fecha del archivo en auto de la copia de la notificación y a partir de [qué] fecha comenzará a transcurrir el término.[75] (Énfasis nuestro y suplido).

---

[74] Íd. 21 LPRA sec. 4701 (derogada).
[75] 21 LPRA sec. 4702 (derogada).

Por consiguiente, se desprende de la Ley de Municipios Autónomos, *supra,* que el término de veinte (20) días para impugnar cualquier ordenanza, resolución o acuerdo de la Legislatura Municipal o de cualquier funcionario del municipio, ante el Tribunal de Primera Instancia es uno de **caducidad.**[76] Así pues, al tratarse de un término de caducidad, el mismo no admite interrupción, esto con el propósito de impartirle certeza y finalidad a las actuaciones del gobierno municipal.

De este modo, "el transcurso del término de caducidad para impugnar tales actuaciones dependerá de si la ordenanza, resolución o acuerdo municipal es de aplicación general o específica".[77] Tal efecto, "[s]i su **aplicación es general, se deduce que el término comenzará a transcurrir al día siguiente a la fecha de la actuación legislativa o administrativa**".[78] Por el contrario, "cuando la ordenanza, resolución o acuerdo municipal es de aplicación específica, el término de caducidad se entiende que ha comenzado a transcurrir desde la notificación a la parte afectada por tal actuación".[79]

Por último, cabe resaltar que, mediante la promulgación del Código Municipal de Puerto Rico, *supra*, el cual tuvo el efecto de derogar la Ley de Municipios Autónomos, *supra*, el legislador mantuvo su intención

---

[76] *Mun. de Peñuelas v. Ecosystems, Inc.*, supra.
[77] Íd.
[78] Íd.
[79] Íd.

intacta en torno a los términos y el mecanismo para solicitar la impugnación de una Ordenanza Municipal.

**D. Efecto de una actuación *ultra vires***

En múltiples instancias hemos discutido los efectos jurídicos de una actuación nula. En ese sentido, un acto ejecutado en contravención a lo dispuesto por ley es nulo. Por lo cual, la nulidad del acto lo convierte en uno inexistente.[80] Ante ello, "lo inexistente nunca puede ser convalidado", simplemente porque nunca tuvo eficacia jurídica.[81] Por consiguiente, resulta inmaterial apuntillar como controversia si la actuación municipal, ordenanza o resolución, se impugnó oportunamente si esto de por sí no tiene el efecto de convalidar un acto que jamás existió.

Asimismo, de manera análoga se ha enfatizado que "lo inexistente *nunca puede ser convalidado*", norma que "no puede ser burlada al invocar para ello el término jurisdiccional de veinte días que dispone [la ley]".[82] A tal efecto, "hemos señalado que la acción para decretar la inexistencia de un contrato nunca prescribe y que, por consiguiente, no hay punto de partida para contar término de prescripción alguno".[83] Cabe destacar, que "[e]sta norma, firmemente enraizada en nuestro ordenamiento civil, no puede ser burlada con la mera aprobación de una

---

[80] *Reliable Fin. v. ELA*, 197 DPR 289, 318-19 (2017), *Opinión de conformidad en parte y disidente en parte* emitida por la Jueza Presidenta Oronoz Rodríguez.
[81] Íd.
[82] Íd.
[83] *Ríos v. Municipio Isabela*, supra.

resolución que pretenda encubrir la nulidad de un acuerdo ilegal".[84] Por consiguiente, efectivamente "el término de caducidad que dispone el Art. 15.002, ante, no puede tener el efecto de frenar un decreto de inexistencia de contrato y, mucho menos, puede convertirse en subterfugio para convalidar contratos nulos".[85]

En consonancia con lo antes expuesto, en <u>Ríos v. Municipio Isabela</u>, *supra*, resolvimos que la resolución mediante la cual se intentó convalidar una actuación inexistente, no una actuación municipal que tuviese el efecto de lesionar derechos garantizados por la Constitución del Estado Libre Asociado o por las leyes estatales, que es lo que establece la Ley de Municipios Autónomos en su Art. 15.002, *supra;* no acarrea eficacia jurídica. **Por consiguiente, debe quedar claro que no hay razón alguna para que los foros inferiores entren a discutir lo relativo al término de caducidad ante la nulidad de un acto.**[86] A esos fines, "[r]ecordemos que lo inexistente nunca puede ser convalidado, ni siquiera mediante la aprobación de una resolución municipal".[87]

Por último, pero no menos relevante, es menester destacar que esta Curia ha reiterado "que las ordenanzas municipales, al igual que los estatutos, se presumen constitucionales hasta que un tribunal competente declare lo contrario, y que,  le corresponde a

---

[84] Íd.
[85] Íd.
[86] Íd.
[87] Íd.

la parte que la impugna probar su inconstitucionalidad".[88] No obstante, aunque la interpretación inicial que haga otra rama sobre la Constitución merece deferencia; en esencia recae sobre los tribunales la facultad de declarar la inconstitucionalidad de las leyes.[89] En ese sentido, hemos enfatizado que es deber de los tribunales seguir la voluntad de la legislatura, a menos que el derecho que se trata de ejercitar sea claramente contrario a la Constitución.[90]

**III**

El apelante nos solicita que revoquemos la *Sentencia* emitida el 18 de febrero de 2020 por el Tribunal de Apelaciones, que confirmó la *Sentencia* emitida por el foro primario la cual, a su vez, declaró nula *ab initio* e inconstitucional la Ordenanza aprobada por el Municipio de San Lorenzo. Esto, por entender que este último se excedió de la facultad delegada por la Constitución mediante la Asamblea Legislativa. Luego de examinar detenidamente los argumentos esbozados por las partes y la prueba que obra en el expediente de autos, sostengo que se debe **confirmar la determinación apelada.** Veamos.

De entrada, hago hincapié en que la facultad que le ha sido delegada a los municipios para atender sus necesidades sociopolíticas y sobre todo económicas se deriva de nuestra Carta Magna. De este modo, es la Rama

---

[88] *E.L.A. v. Northwestern Selecta*, 185 DPR 40, 71 (2012).
[89] *Senado de Puerto Rico v. Gobierno de Puerto Rico*, 203 DPR 62 (2019).
[90] *Dalmau Santiago v. Oronoz Rodríguez*, 2021 TSPR 141, 20.

Legislativa quien tiene la autoridad para delimitar y reglamentar el funcionamiento de estas entidades gubernamentales cónsono al mandato constitucional. Conforme con ello, el poder de imponer tributos no es uno inherente y absoluto, sino subordinado a la intención y orden legislativo.

A tal efecto, MMR, como entidad jurídica con fines de lucro, se encuentra atada al cumplimiento del pago de la patente municipal acorde a lo dispuesto en la Ley de Patentes Municipales, *supra*. De esa manera, MMR le emitió un pago por concepto de la patente municipal para el año 2016-2017 equivalente al cobro máximo permitido por ley por parte de un municipio, es decir a base del .50% del 1% del volumen de ingreso correspondiente al año natural.

En virtud de la Ordenanza, el **Municipio ilegalmente añadió .25% sobre el volumen de ingreso de MMR en clara contravención a lo dispuesto en la Ley de Patentes Municipales,** *supra*. **Lo anterior, resulta en una extralimitación al poder delegado a través de nuestra Constitución. Esto, a pesar de que el máximo permitido a cobrar por parte de los municipios por concepto de patente municipal es de .50% del 1% del volumen de ingreso de negocio.** Por lo tanto, aclaro que tal impuesto— en ningún caso— puede exceder del .50% por cada 1% de volumen de negocio. Así pues, sostengo que, mediante la aprobación de la Ordenanza 16-OT, Serie 2016-2017, el Municipio excedió sus facultades.

Mediante dicha aprobación, el apelante actuó de forma *ultra vires* al utilizar la misma base contributiva, es decir, el volumen de ingresos de una entidad con fines de lucro con el fin de imponer un arbitrio sobre embellecimiento, ornato y reciclaje en el Municipio de San Lorenzo. Como resultado, incurrió en la imposición de una doble tributación. El Municipio, *motu proprio,* se delegó la facultad de aumentar el porcentaje a cobrarse por concepto de patente municipal sin que existiese una clara y explícita legislación, no hay duda de que tal actuación es **impermisible con nuestro esquema constitucional**.

Si bien es cierto que, a los Municipios, como criaturas de la Asamblea Legislativa se les ha conferido una limitada autoridad para regular lo concerniente a su actividad económica con el fin de que sean autosustentables y puedan proveer un servicio más eficaz a sus habitantes, esto no les confiere un poder absoluto de extraer sus primordiales fuentes de ingreso. Ante ello, queda meridianamente claro que el Municipio, bajo el pretexto de recaudar fondos adicionales, evidentemente aumentó el caudal que pudiese recaudar mediante el cobro por concepto de patente municipal.

En torno al presunto esquema de doble tributación, esta Curia ha señalado que resulta impertinente el nombre que el municipio le asigne al arbitrio. En ese sentido, previamente hemos señalado que, para determinar la

legalidad de una contribución, no es relevante su forma, nombre o definición, sino su efecto práctico y consecuencias en su aplicación y funcionamiento. Es decir, lo relevante es analizar cuál es el fin que se persigue con la imposición de ese arbitrio.

De este modo, si ese propósito —es decir la doble tributación— no se deriva de la intención del legislador, entonces se tiene que concluir que dicha actuación es *ultra vires*, y, por ende, improcedente en derecho. Así pues, lo determinante es que exista una correlación entre la naturaleza de la imposición del arbitrio y la intención de la Rama Legislativa. Ya que, después de todo nuestro ordenamiento no prohíbe la doble tributación, sino más bien las actuaciones en exceso del poder delegado mediante mandato constitucional.

Conforme con ello, la doble tributación por medio de arbitrios municipales excede las facultades delegadas a estos si no ha sido decretado por la Asamblea Legislativa. Concluir de manera contraria fomentaría el uso de clasificaciones contributivas en favor de las necesidades de la comunidad como subterfugio para aumentar la imposición de arbitrios más allá del alcance de la autoridad limitada brindada. A la luz de ello, y mediante la promulgación de la Ley de Patentes Municipales, *supra*, precisamente quedó plasmada la intención del legislador a los fines de proveerle a los municipios fuentes de ingresos para cubrir las

necesidades del pueblo dentro de las cuales se encuentra el embellecimiento, ornato y reciclaje, entre otras.

En específico, cabe señalar que en virtud del Artículo 2.002 de la Ley de Municipios Autónomos, *supra*, se les confirió a los municipios la autoridad de imponer contribuciones, arbitrios y tarifas dentro de sus límites territoriales siempre y cuando estos no sean incompatibles con la legislación estatal. **Así pues, en la medida en que el Municipio de San Lorenzo actuó en contravención a lo dispuesto en la Constitución y a su vez, contrario a la intención legislativa mediante la promulgación de la Ley de Municipios Autónomos, supra, y la Ley de Patentes Municipales, *supra*, concluimos que la Ordenanza es nula *ab initio* y, por ende, correctamente la invalidamos por inconstitucional.**

Desafortunadamente, pese a existir **un solo criterio en cuanto al aspecto de la inconstitucionalidad,** no fue posible emitir una Opinión del Tribunal.

Ahora bien, aclarado el decreto de nulidad e inconstitucionalidad de la Ordenanza Municipal mediante una *Sentencia*, procede dirimir el señalamiento del apelante en torno a que, ante la presentación a destiempo de la *Demanda* por parte de MMR con el fin de impugnar la Ordenanza acorde al término de caducidad de veinte (20) días dispuesto en la Ley de Municipios Autónomos, *supra*, tanto el foro primario como intermedio actuaron sin

jurisdicción y de manera prematura. **Tampoco le asiste la razón al Municipio.**

La Ley de Municipios Autónomos, *supra*, en su Artículo 15.002— vigente al momento de los hechos que originan esta controversia— establecía un término de caducidad de veinte (20) días para entablar el proceso de impugnación de una actuación municipal. Este periodo adquiere eficacia cuando lo que se pretende es "[s]uspender la ejecución de cualquier ordenanza, resolución, acuerdo u orden de la legislatura, del alcalde o de cualquier funcionario del municipio que lesione derechos garantizados por la Constitución del Estado Libre Asociado de Puerto Rico o por las leyes estatales".[91] De este modo, la precitada ley le confirió **jurisdicción** tanto al Tribunal de Primera Instancia como al Tribunal de Apelaciones bajo el precitado articulado.

Sin embargo, el Municipio nos solicita que revivamos una Ordenanza que es nula *ab initio* y la cual no tiene el efecto de acarrear consecuencias jurídicas. **Por ende, estamos contestes con la determinación del foro primario e intermedio.** En ese sentido, "aquí no se trata de que la Ordenanza Municipal lesiona derechos legales o constitucionales, para lo que es el procedimiento de revisión judicial que contempla el Artículo 15.002 de la Ley de Municipios Autónomos".[92]

---

[91] 21 LPRA sec. 4702 (derogada).
[92] Apéndice del recurso de Apelación, *Sentencia*, pág. 108.

Como parte del racional que sostiene mi criterio, debimos pautar que el mero transcurso del tiempo no puede investir en el Municipio de San Lorenzo una facultad que ni la Constitución ni la Asamblea Legislativa le otorgaron. Por lo tanto, al analizar de manera análoga las consecuencias jurídicas de la otorgación y ejecución de contratos y actuaciones contrarias a nuestro ordenamiento, no hay duda de que nos encontramos ante un acto nulo e inexistente al cual es improcedente considerar un término de caducidad.

¿Cómo pretende el Municipio que se active el término de caducidad dispuesto en ley para impugnar una actuación municipal que no existe jurídicamente? Así, validar una actuación inconstitucional crearía un subterfugio para que los municipios se adjudiquen poderes que no poseen. Del mismo modo, puntualizo que **un término de caducidad no tiene el efecto de conferirle a los municipios prerrogativas contrarias a la Constitución**, y a su vez, convalidar actos nulos. Asimismo, en otras instancias ——en materia de obligaciones y contratos— hemos tenido la oportunidad de expresar que la acción para decretar la inexistencia de un acto nulo nunca prescribe, por consiguiente, no hay punto de partida para contar término de prescripción alguno. A la luz de los fundamentos enunciados, **resulta irrelevante entrar a dilucidar los argumentos jurisdiccionales sobre el proceso de impugnación de la actuación municipal.**

En un laberinto jurídico, algunos miembros de este Tribunal erradamente concluyen que a la Ordenanza le era de **aplicación específica** a MMR solo por el simple hecho de que este último recibiera una carta de cobro por parte del Municipio. De una cuidadosa revisión del texto de la Ordenanza, observamos que el aumento del arbitrio se le impuso a **toda persona natural o jurídica que se dedique a negocios, oficios, profesiones y toda clase de actividades con fines de lucro en el Municipio de San Lorenzo**. Ante ese hecho irrefutable, sostener que su aplicación es específica a MMR, es un error conceptual que lleva a algunos compañeros de este Tribunal a perder el camino de su laberinto. Esta divergencia, evitó que en el día de hoy habláramos con **una sola voz y pautáramos una norma clara y necesaria en nuestro estado de derecho.**

Edgardo Rivera García
Juez Asociado