NOGAMA CONSTRUCTION CORPORATION, demandante y recurrente, *v.* MUNICIPIO de AIBONITO, demandado y recurrido.

*Número:* RE-93-554          *Resuelto:* 18 de mayo de 1994

---

[12] Esta decisión hace innecesario pronunciarnos sobre los restantes señalamientos de error.

*Fernando Barnés Vélez*, abogado de los recurrentes; *Ángel R. Rodríguez Ajá*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Mediante recurso de revisión comparece ante nos la demandante recurrente Nogama Construction Corporation (en adelante Nogama) y solicita la revocación de una sentencia del Tribunal Superior, Sala de Aibonito, que deses-

timó, por carecer de jurisdicción, una demanda en la que solicitó que se le relevara del pago de unos arbitrios de construcción impuestos por el Municipio de Aibonito (en adelante Municipio). El 21 de enero de 1994 emitimos una resolución donde concedimos al Municipio un término de veinte (20) días para que compareciera mediante escrito a mostrar causa por la cual no debía expedirse el auto solicitado. Revocamos.

I

Luego de la correspondiente subasta pública, la Autoridad de Acueductos y Alcantarillados de Puerto Rico (en adelante la Autoridad) le adjudicó a Nogama el proyecto denominado *Aibonito Waste-water Treatment Plant—EPA Proyect No. C–720128–10*. El contrato correspondiente fue otorgado el 12 de enero de 1987. En éste se acordó la cuantía de cuatro millones novecientos noventa y cuatro mil dólares ($4,994,000) como su precio de construcción. En conformidad con el referido contrato, Nogama realizó la construcción de la obra en el Municipio.

Mediante Carta de 29 de junio de 1990 el Municipio le informó a Nogama que una revisión de sus libros había revelado que la empresa adeudaba la cantidad de veintinueve mil novecientos cincuenta y dos dólares ($29,952) por concepto de los arbitrios relacionados con esta obra de construcción. En la carta suscrita por la recaudadora oficial del Municipio se le informó a Nogama que si tenía alguna duda al respecto se comunicara con la suscribiente. La misiva no hacía referencia a la ordenanza en virtud de la cual se impusieron dichos arbitrios.([1]) El 8 de agosto de 1990 el contralor de Nogama solicitó, a través de una carta

---

([1]) Nada de lo expresado en las tres (3) cartas enviadas por el Municipio de Aibonito a Nogama Construction Corporation indicaba que las mismas constituían una notificación final de una adjudicación sobre deuda contributiva de un funcionario municipal.

dirigida a la recaudadora oficial del Municipio, que se le enviara una (1) copia certificada de la Ordenanza Municipal que dio fundamento a la imposición de los arbitrios de construcción. En respuesta a dicha carta, el 14 de agosto de 1990 la recaudadora oficial del Municipio se limitó exclusivamente a enviar al contralor de Nogama una copia certificada de la Ordenanza Municipal Núm. 26, Serie 1963–64. Posteriormente, la asesora jurídica del Municipio aclaró que los arbitrios se impusieron en virtud de la Ordenanza Municipal Núm. 16, Serie 1989–90, aprobada con posterioridad al contrato de construcción.[2]

El 2 de octubre de 1990 el Lcdo. Fernando Barnés, en representación de Nogama, se dirigió mediante carta al Sr. Osvaldo Rivera, Director de Finanzas del Municipio. En esta carta, el licenciado Barnés hizo referencia a una audiencia que el Municipio le concedió a Nogama el 26 de septiembre de 1990. Además, expresó que el cobro de los arbitrios de construcción no procedía por cinco (5) razones en derecho, las cuales quedaron establecidas en la carta. Finalmente, solicitaron la reconsideración del cobro de dichos arbitrios y la exención de este cobro al proyecto de la planta de tratamiento de Aibonito.

Nogama alega que dicha solicitud, para que se le eximiera del pago de los referidos arbitrios, dio pie a una serie de reuniones (por lo menos seis (6)) entre los representantes de las partes. La última reunión se celebró el 3 de abril de 1992.

El 21 de julio de 1992, en vista de que el tiempo transcurría sin que se hubiese producido la notificación final de la decisión del Municipio sobre la disputada deuda contributiva, Nogama optó por acudir al tribunal de instancia en

---

[2] Las dos (2) ordenanzas que fueron invocadas en una u otra ocasión como la única fuente impositiva del arbitrio en cuestión carecen de un procedimiento a seguir por el contribuyente que pueda resultar afectado por una decisión municipal adversa de deuda contributiva.

solicitud de una sentencia declaratoria que le relevara de la aplicación de dichas ordenanzas.

El Municipio presentó una moción de desestimación por falta de jurisdicción en la cual expuso que la demanda se había presentado casi dos (2) años después de habérsele notificado la ordenanza a Nogama y que no se cumplió con el término establecido en el Art. 11.02 de la Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. sec. 3402. Por su parte, Nogama en su oposición a la solicitud de sentencia sumaria estableció que su contención no era que la ordenanza, en virtud de la cual el Municipio le impuso el arbitrio, fuese nula o inconstitucional, sino que en el caso de autos estaba impedido de cobrarle unos arbitrios sobre la misma actividad por la cual ya había pagado una patente municipal a tenor con la Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974 (21 L.P.R.A. sec. 651 *et seq.*). Es decir, Nogama no pretendía que se declarara inconstitucional la ordenanza, sino que se le relevase del pago del referido arbitrio, a fin de protegerlo de una doble tributación.

Luego de varios trámites procesales, el Tribunal Superior declaró con lugar la moción de desestimación del Municipio. Concluyó que Nogama presentó su demanda fuera del término de veinte (20) días dispuesto por el Art. 11.02 de la Ley Orgánica de los Municipios de Puerto Rico, *supra*, para la impugnación de una ordenanza.

Oportunamente, Nogama presentó ante nos un recurso de revisión que sostiene que erró el Tribunal Superior al desestimar la demanda por falta de jurisdicción. Mediante resolución concedimos al Municipio un término para que compareciera a mostrar causa por la cual no debía expedirse el auto solicitado. Luego de estudiar la comparecencia del Municipio, procedemos según el curso decisorio intimado.

## II

Para resolver el caso de marras es pertinente considerar la siguiente cuestión señalada por Nogama en su recurso de revisión:

> Cuál es el punto de partida del término jurisdiccional de 20 días dentro del cual puede instarse una acción judicial que, en vez de perseguir la suspensión de la ejecución de unas ordenanzas, procura que se dicte una sentencia declaratoria de que dichas ordenanzas no son aplicables a la parte actora, instada dicha acción porque no se acababa de notificar una adjudicación del correspondiente funcionario municipal que hubiese podido haberse dictado sobre la aplicabilidad de dichas ordenanzas. Solicitud de revisión, pág. 6.

En esencia, Nogama expone que cuando se trata de una acción dirigida a impugnar la decisión adjudicativa que ha tomado un funcionario municipal, luego de aplicar las disposiciones de una ordenanza, el término de caducidad de veinte (20) días se contaría a partir de la notificación final de dicha decisión y no desde el momento en que la ordenanza fue meramente notificada a la parte demandante.

El Art. 11.02 de la Ley Orgánica de los Municipios de Puerto Rico, *supra*, vigente al momento del requerimiento del pago de arbitrios de construcción por parte del Municipio, establecía, en lo pertinente, que:

> El Tribunal Superior de Puerto Rico tendrá jurisdicción exclusiva para entender y resolver a instancias de la parte perjudicada sobre los siguientes asuntos:
> (a) Revisar o anular cualquier acto legislativo o administrativo de la Asamblea, de la Junta de Subasta, del Alcalde o de cualquier funcionario del municipio que lesione derechos constitucionales de los querellantes o que sea contrario a las leyes de Puerto Rico.
> (b) Para suspender la ejecución de cualquier ordenanza, acuerdo, resolución u orden de la Asamblea, de la Junta de Subastas, del Alcalde y cualquier funcionario del municipio que lesione derechos garantizados por la Constitución del Estado Libre Asociado de Puerto Rico o por leyes estatales.

> En los dos primeros casos, la acción judicial sólo podrá instarse dentro de los primeros veinte (20) días a contar de la fecha en que el acto legislativo o administrativo haya sido realizado o que la ordenanza, resolución, acuerdo u orden haya sido promulgado o comunicado a la parte querellante, a menos que se disponga otra cosa por ley. 21 L.P.R.A. sec. 3402.

La Ley Orgánica de los Municipios de Puerto Rico fue derogada por la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4001 *et seq.*), según enmendada. No obstante, los artículos pertinentes al caso de marras permanecieron inalterados por la nueva ley. Véanse los Arts. 15.002, 1.003, 6.001, 6.002 y 12.003 de la nueva ley, 21 L.P.R.A. secs. 4702, 4001, 4251, 4252 y 4553, respectivamente.

Un examen del estatuto revela claramente que los incisos (a) y (b) del Art. 11.02 (21 L.P.R.A. sec. 3402(a) y (b)) son aplicables en distintas circunstancias. El primero le concede jurisdicción exclusiva al Tribunal Superior para revisar o anular cualquier acto legislativo o administrativo de la Asamblea, de la Junta de Subasta, del Alcalde o de cualquier funcionario del Municipio que lesione los derechos constitucionales de los querellantes o que sea contrario a las leyes de Puerto Rico.

Este inciso (a) es el aplicable a la acción cuando se solicite la revisión de algún acto o decisión administrativa en virtud de lo dispuesto por una ordenanza. Éste se activa cuando se cuestiona una determinación final de un funcionario municipal en un caso particular, en el cual se le aplican a una persona las disposiciones de una ordenanza. Por ende, el término de veinte (20) días se cuenta a partir de la determinación final del funcionario una vez se agotan los trámites correspondientes. Esta notificación es un requisito del debido procedimiento de ley con el que se debe cumplir de modo tal que el ciudadano afectado pueda enterarse de la decisión final que se ha tomado en su contra.

■ Por otro lado, el inciso (b) se aplica a las acciones que persiguen la suspensión de cualquier ordenanza, acuerdo, resolución u orden de la Asamblea, de la Junta de Subasta, del Alcalde y de cualquier funcionario del Municipio que lesione los derechos garantizados por la Constitución del Estado Libre Asociado de Puerto Rico o por las leyes estatales. Es evidente que este inciso es aplicable cuando se pretende evitar que se ponga en vigor una ordenanza que sea inconstitucional o contraria a las leyes del Estado Libre Asociado de Puerto Rico.

## III

■ En lo referente al inciso (a) del Art. 11.02, *supra*, es pertinente distinguir entre la notificación final de una decisión de un funcionario municipal y los actos o comunicaciones de otros empleados municipales. Solamente la notificación final de una determinación administrativa de un funcionario municipal tiene el efecto de activar los términos establecidos por el inciso (a) del Art. 11.02 de la Ley Orgánica de los Municipios de Puerto Rico, *supra*. Para comprender la mencionada distinción es preciso puntualizar la definición que la ley otorga al término *funcionario*. El Art. 2.05 de la Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. sec. 2055, define *funcionario* de la forma siguiente:[3]

Los funcionarios del municipio serán aquellos electos con-

---

[3] El Art. 1.003 de la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, 21 L.P.R.A. sec. 4001, hace una distinción en sus definiciones entre los términos "Empleado" y "Funcionario Municipal". La ley define "Empleado" como sigue:

" 'Empleado' significará toda persona que ocupe un puesto y empleo en el gobierno municipal que no esté investido de parte de la soberanía del gobierno municipal y comprende los empleados regulares, irregulares, de confianza, empleados con nombramientos transitorios y los que estén en período probatorio." 21 L.P.R.A. sec. 4001(n).

Por otro lado, la ley define "Funcionario Municipal" del modo siguiente:

" 'Funcionario Municipal' significará toda persona que ocupe un cargo público electivo de nivel municipal, el Secretario de la Asamblea y los directores de las unidades administrativas de la Rama Ejecutiva Municipal." 21 L.P.R.A. sec. 4001(q).

forme a las disposiciones de este Subtítulo y los incumbentes de los siguientes cargos administrativos:

(a) Secretario de la Asamblea Municipal.

(b) Directores de las unidades administrativas de la rama ejecutiva.

El Art. 2.03 de la Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. sec. 2053, establece que la Rama Ejecutiva municipal estará compuesta de unidades administrativas tales como la Oficina del Alcalde, la Oficina de Finanzas, Beneficencia Pública, Obras Públicas y Secretaría Municipal. Cada una de estas unidades administrativas tendrá un director. El Art. 10.08 de la ley, 21 L.P.R.A. sec. 3358, dispone que los directores de las unidades administrativas estarán comprendidos en la categoría de empleados de confianza y su nombramiento estará sujeto a la confirmación de la Asamblea Municipal. El Art. 10.02 de la misma ley, 21 L.P.R.A. sec. 3352, define como empleado de confianza a todo empleado que interviene, asesora, responde o presta servicios directos al Alcalde o a la Asamblea Municipal.

Al amparo del ordenamiento, el Director de la Oficina de Finanzas Municipales es uno de los funcionarios municipales cuyo nombramiento tiene que ser confirmado por la Asamblea Municipal. Por lo tanto, esta división es la única cuya decisión tiene la finalidad requerida por la ley de activar los términos para solicitar la revisión judicial.

## IV

Al aplicar la normativa anteriormente expuesta a los hechos de este caso, un examen del lenguaje de la comunicación enviada a Nogama por la recaudadora del Municipio demuestra que dicha carta no constituía una notificación de deficiencia contributiva. La carta es meramente un escrito en el que la recaudadora le informó a Nogama que los libros reflejaban una deuda de veintinueve mil novecientos cincuenta y dos dólares ($29,952) por concepto de los arbi-

trios de construcción y le avisa que de tener alguna duda al respecto se comunique con el Municipio.

Además, la carta no fue firmada por el funcionario municipal a cargo de la dirección de la unidad administrativa correspondiente, el Director de Finanzas. Ni la recaudadora oficial ni la asesora legal tenían la autoridad conferida por ley o delegación para tomar la determinación final que activara los términos apelativos provistos por el estatuto. De hecho, en el caso de marras el Director de Finanzas nunca envió la notificación final en cuanto a si en el caso particular de Nogama le era aplicable el arbitrio de construcción.

Como el término de veinte (20) días que establece el Art. 11.02, *supra*, empieza a correr a partir de la notificación final de la decisión administrativa, y el Director de Finanzas nunca envió una notificación de esta determinación, el tribunal de instancia tenía jurisdicción para atender la solicitud de sentencia declaratoria de Nogama.

## V

En el recurso de revisión ante nos, Nogama también sostiene que la imposición del arbitrio a su empresa constituye una doble tributación no permitida por ley, a la fecha en que fue otorgado el contrato entre la Autoridad y Nogama.

Aduce que la doble tributación a su empresa, que supone la coincidencia de un arbitrio municipal de construcción con la patente municipal sobre un mismo evento económico, no estuvo permitida hasta que entró en vigencia la Ley Núm. 93 de 17 de noviembre de 1992 (21 L.P.R.A. secs. 651–652), la cual enmendó la Ley de Patentes Municipales. El contrato entre la Autoridad y Nogama fue otorgado el 12 de enero de 1987. Por lo tanto, Nogama señala que, habiendo realizado la actividad de construcción por la cual pagó las patentes municipales, y por la cual el Municipio le

requiere además los arbitrios de construcción, con anterioridad a la fecha en que entró en vigencia la Ley Núm. 93, *supra,* la imposición contributiva realizada por el Municipio constituye una doble tributación no autorizada por ley. Le asiste la razón.

■ La solicitud de Nogama está acorde con lo que resolvimos en *Las Piedras Const. Corp. v. Mun. de Dorado,* 134 D.P.R. 1018, 1022–1023 (1994):

> La Ley de Patentes computa el impuesto a base del ingreso bruto del contratista, equivalente a lo que le pagan por la obra, y la Ordenanza Núm. 28 que nos ocupa, también dispone que el impuesto se determinará en virtud del costo de la obra. Constituye, pues, un esquema de doble tributación al recaer ambos impuestos sobre el mismo evento económico, ya que el ingreso bruto que recibe el contratista está comprendido en el costo de la obra, concurriendo así los criterios que hemos esbozado para identificar este tipo de esquema: (a) misma propiedad; (b) misma entidad gubernamental; (c) mismo período contributivo, y (d) para el mismo fin. (Énfasis suprimido.)

En dicho caso dejamos establecido que no existía disposición en la Ley de Patentes Municipales que clara y explícitamente permitía al Municipio establecer el esquema de doble tributación a Las Piedras Construction Corp. Por ende, declaramos ilegal el arbitrio de construcción impuesto a la mencionada corporación. Igualmente, procede que invalidemos el arbitrio de construcción cobrado en el caso de autos pues recae sobre el mismo evento económico que las patentes municipales cobradas anteriormente.

El arbitrio en el caso de marras es ilegal y el Municipio de Aibonito está impedido de cobrarlo.

*Se dictará la sentencia correspondiente.*