ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| RICARDO ALICEA OTERO<br><br>Parte Recurrente<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE BAYAMÓN, OFICINA DE PLANIFICACIÓN, ORDENAMIENTO TERRITORIAL Y ADMINISTRACIÓN DE FONDOS FEDERALES DEL MUNICIPIO<br><br>Parte Recurrida | KLRA202300578 | *Recurso de Revisión Administrativa* procedente de la Oficina de Planificación, Ordenamiento Territorial y Administración de Fondos Federales del Municipio de Bayamón<br><br>Caso Núm.: 2023-15-0039-CC<br><br>Sobre: Denegación de Recalificación Directa de Predio de Residencial-Intermedio (R-I) a Comercial Intermedio (C-I) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece el Sr. Ricardo Alicea Otero (recurrente o Sr. Alicea), mediante el recurso de revisión administrativa de epígrafe. En este, nos solicita la revocación de una *Resolución* emitida el 13 de octubre de 2023,[1] por la Oficina de Planificación, Ordenamiento Territorial y Administración de Fondos Federales (Oficina de Planificación), del Municipio de Bayamón. Mediante dicha

---

[1] La *Resolución* fue notificada y archivada el 5 de febrero de 2024.

resolución, se denegó el cambio del distrito de calificación vigente del predio Núm. 58,192 del Municipio de Bayamón.

Por los fundamentos expuestos a continuación, revocamos la resolución recurrida.

**I.**

El 27 de abril de 2023, el Sr. Alicea presentó una *Solicitud de Cambio de Calificación* ante la Oficina de Planificación, con el propósito de cambiar la calificación territorial de su propiedad, la finca Núm. 58,192, ubicada en la Carr. 167 Km. 14.6 de Bo. Buena Vista de Bayamón, (en adelante propiedad o predio).[2] En el cambio propuesto, se requirió la variación de la finca Núm. 58,192 para que dejara de ser Residencial Intermedio (R-1) y se convirtiera en Comercial Intermedio (C-1). A su vez, dicho cambio conlleva una variación en el mapa de calificación del Municipio de Bayamón.[3]

Así las cosas, el 15 de mayo de 2023, se instaló un rótulo en el predio para notificarle al público la presentación de una solicitud de cambio.[4] Más adelante, la Oficina de Planificación señaló una vista pública para el 18 de julio de 2023.[5] Celebrada la vista pública, comparecieron el Sr. Alicea y la Sra. Damaris García de Alicea, quienes son los titulares del predio. Además, compareció la Sra. Johanna Alicea García, hija de los propietarios y quien estuvo a cargo de la ponencia en apoyo a la solitud de calificación.[6] Al mismo tiempo, para poder tener el expediente administrativo más completo, se le concedió al proponente y al público en general un término de 10 días para que presentaran información que fue alegadamente requerida en la vista.[7]

---

[2] La solicitud fue presentada a través de la hija del Sr. Alicea, la Sra. Johanna Alicea García. Véase, apéndice del recurso, págs.14-16.
[3] *Íd.*
[4] *Íd.*, a la pág. 69.
[5] La vista pública fue notificada al público en general, a través de la publicación en periódicos de circulación general y avisos en emisora radial. Véase apéndice del recurso, págs. 71-83.
[6] Apéndice del recurso, págs.104-105.
[7] *Íd.*, a la pág. 105.

A raíz de lo anterior, el oficial examinador rindió un informe el 25 de agosto de 2023, recomendando favorablemente la recalificación sobre el cambio de Residencial Intermedio (R-I) a Comercial Intermedio (C-I).[8]

Finalmente, después de haberse completado el expediente administrativo, el 13 de octubre de 2023, la Junta de Planificación emitió una *Resolución,* en la cual denegó el cambio de calificación propuesto.[9] Según se desprende del expediente y en lo pertinente al recurso que nos ocupa, la Oficina de Planificación fundamentó la denegatoria en qué;

> Luego de concluir el proceso de Vista Pública y el Oficial Examinador presentar su informe, esta Oficina tuvo conocimiento de que esta parcela será afectada por la construcción de la carretera PR-5. Se obtuvo información sobre el trámite 2021-403771-DIA-000282. Además, el municipio obtuvo información de un caso de expropiación por parte de la Autoridad de Carreteras y Transformación en esta propiedad. Esto fue confirmado por la oficina de la Autoridad de Carreteras donde nos indican, a través de una carta firmada por el Director del Área de Adquisición de Propiedades, José A. Torres Aponte, que actualmente están activos los casos KEF1998-1023 y KEF2004-1251.[10]

Inconforme, con la antedicha decisión, el Sr. Alicea acude ante esta Curia y señala que la Oficina de Planificación cometió los siguientes errores:

> Erró la Oficina de Planificación del Municipio al notificar la Resolución sin incluir advertencias adecuadas y correctas sobre el recurso de revisión disponible, con expresión de los términos correspondientes.
>
> Erró y actuó de forma ultra vires el Director de la Oficina de Planificación del Municipio, al realizar una consulta a la ACT, gestionar información y obtener una carta de manera ex parte, después de completado el expediente administrativo para la evaluación de la solicitud y luego de emitido el informe del oficial examinador.
>
> Erró y actuó de forma ultra vires la Oficina de Planificación del Municipio, al considerar información errónea que obtuvo ex parte y, no, los documentos que

---

[8] Apéndice del recurso, págs. 1-12.
[9] *Íd.,* a las págs. 104-111.
[10] *Íd.,* a la pág. 105.

obran en el expediente administrativo, para formular su determinación en el caso objeto de revisión.

Erró la Oficina de Planificación del Municipio al denegar de forma arbitraria, caprichosa, irrazonable e ilegal la enmienda a la hoja Núm. 083 del Plan de Orientación Territorial del Municipio (POT), supra, para recalificar como Comercial Intermedio (C-1) el predio.

(Mayúsculas y énfasis suprimidos).

Al examinar el recurso instado, el 5 de diciembre de 2023, le concedimos a la parte recurrida acreditar su posición sobre el recurso presentado. No obstante, transcurrido el término concedido, la parte recurrida no ha comparecido. Ante ello y según advertido, procedemos a resolver sin el beneficio de su comparecencia.

El 11 de junio de 2024, la Oficina de Planificación, Ordenamiento Territorial y Administración del Municipio de Bayamón presentó la *Comparecencia Especial* adjuntando copia certificada del expediente del caso número 2023-15-0039-CC, según le fue solicitado.

**II.**

**A.**

La Ley Núm. 161-2009, intitulada *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, según enmendada,[11] establece el marco legal y administrativo que rige la solicitud, evaluación, concesión y denegación de permisos por parte del Gobierno de Puerto Rico.[12] Cónsono con ello, el Art. 2.5 de la Ley Núm. 161-2009, *supra*, dispone que los cambios de calificación o recalificación directa de solares serán evaluados por la Junta de Planificación, quien emitirá la determinación final.[13] Por otro lado, en el Art. 8.7 de la Ley 161-2009, expresamente dispone que;

> [...]En el caso de las determinaciones finales relacionada al proceso de recalificación de terrenos, la misma contendrá: (a) una advertencia clara del derecho a solicitar revisión judicial y el término disponible para

---

[11] 23 LPRA sec. 9011, *et seq.*
[12] Véase, *Spyder Media Inc. v. Mun. de San Juan*, 194 DPR 547, 552 (2016).
[13] 23 LPRA sec. 9012d.

ello; y (b) la advertencia clara de la fecha de vigencia de las recalificaciones.[14]

Ahora bien, el uso de terrenos en Puerto Rico está regulado por la *Ley Orgánica de la Junta de Planificación*, Ley Núm. 75 del 24 de junio de 1975, según enmendada.[15] De manera que, la Junta se creó con el propósito de guiar el desarrollo de Puerto Rico de modo coordinado, adecuado y económico, fomentando el bienestar general y la eficiencia en el proceso de desarrollo, en el uso de las tierras y en las mejoras públicas.[16]

A tales efectos, el Art. 11 de la Ley Núm. 75 de 24 de junio de 1975, *supra*, expresamente dispone una lista taxativa sobre las funciones y facultades generales que tiene la Junta. En lo pertinente, se reconocen entre otras, las siguientes:

> (5) Adoptar y aprobar los mapas de zonificación y las enmiendas a éstos, según el procedimiento que se establece en esta ley.
>
> (14) Hacer determinaciones sobre usos de terrenos dentro de los límites territoriales del Estado Libre Asociado de Puerto Rico, con sujeción a las normas y requisitos consignados en esta ley, o en cualquier otra ley aplicable, para tales casos.[17]

Establecido lo anterior, vale destacar lo dispuesto en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada.[18] A primera vista, en la Sec. 1.3 se define una agencia como:

> "[c]ualquier junta, cuerpo, tribunal examinador, comisión, oficina independiente, división, administración, negociado, [...] o cualquier instrumentalidad del Gobierno de Puerto Rico u organismo administrativo autorizado por ley a llevar a cabo **funciones de reglamentar, investigar, o que pueda emitir una decisión, o con facultades para expedir licencias, certificados, permisos, concesiones, acreditaciones, privilegios, franquicias, acusar o adjudicar** [...].[19] (Énfasis nuestro).

---

[14] 23 LPRA sec. 9018f.
[15] 23 LPRA sec. 62, *et seq.*
[16] *E.L.A. v. Domínguez*, 104 DPR 468 (1975).
[17] 23 LPRA sec. 62j.
[18] 3 LPRA sec. 9601, *et seq.*
[19] 3 LPRA sec. 9603.

Por otro lado, la Sec. 4.1, de la Ley Núm. 38-2017, *supra,* establece que a través del recurso de revisión ante el Tribunal Apelativo, serán revisadas las ordenes, resoluciones y providencias adjudicativas finales, que sean dictadas por agencias o funcionarios administrativos.[20] Por otro lado, también dispone que una parte adversamente afectada por una orden o resolución final de una agencia, puede presentar una solicitud de revisión, dentro del término de 30 días a partir del archivo en autos de la notificación.[21]

Por último, puntualizamos que la Ley Núm. 107-2020, intitulada como el Código de Municipios de Puerto Rico,[22] reconoce en su Art. 6.016 la autoridad que tiene un Municipio y su Oficina de Planificación, para ejercer las facultades de la Junta de Planificación de Puerto Rico y la Oficina de Gerencia de Permisos.[23]

**B.**

Bajo nuestro ordenamiento constitucional, sabido es que ninguna persona puede ser privada de su propiedad sin el debido proceso de ley.[24] Como bien conocemos, el debido proceso de ley tiene dos vertientes: la sustantiva y la procesal.[25] En cuanto a la modalidad procesal, se le exige a los componentes del Estado garantizar que, al interferir con los intereses propietarios de un individuo, lo hagan a través de un procedimiento justo y equitativo.[26]

Como corolario de este mandato constitucional, el Tribunal Supremo de Puerto Rico ha reiterado que en los procedimientos adjudicativos deben observarse las siguientes garantías mínimas:

> (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) **oportunidad de ser oído**; (4) **derecho a contrainterrogar a los testigos y examinar**

---

[20] 3 LPRA sec. 9671.
[21] 3 LPRA sec. 9672.
[22] 21 LPRA sec. 7001, *et seq.*
[23] 21 LPRA sec.7866.
[24] Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1; *Román Ortiz v. OGPe,* 203 DPR 947 (2020).
[25] *Rodríguez Rodríguez v. E.L.A.*, 130 DPR 562, 575 (1992).
[26] *Román Ortiz v. OGPe,* supra, a la pág. 947.

**la evidencia presentada en su contra**; (5) tener asistencia de un abogado; y (6) **que la decisión se base en el récord**.[27] Énfasis nuestro.

Ahora bien, en el ámbito administrativo, el debido proceso de ley no ostenta la misma rigidez que en los procedimientos adjudicativos ante los tribunales.[28] Esto responde a la necesidad que tienen las agencias administrativas de tramitar sus procedimientos de forma expedita y a la pericia que se presume tienen para atender y resolver los asuntos delegados.[29] Sin embargo, el Tribunal Supremo ha reiterado, que en los procedimientos adjudicativos que se realizan en la esfera administrativa, deben ser justos y tienen que ceñirse a las garantías mínimas del debido proceso de ley.[30]

Como corolario de lo anterior, la Sec. 3.1 de la Ley Núm. 38-2017, *supra*, expone que en los procesos adjudicativos llevados a cabo en las agencias administrativas tienen que cumplir con determinadas garantías procesales mínimas, a saber: 1) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; 2) derecho a presentar evidencia; 3) derecho a una adjudicación imparcial; y 4) derecho a que la decisión sea basada en el expediente.[31]

Finalmente, la Sec. 3.14 de la Ley Núm. 38-2017, *supra*, establece que **toda orden o resolución emitida por una agencia advertirá el derecho de solicitar su reconsideración o revisión con la expresión de los hechos correspondientes, y que cumplido este requisito comenzarán a regir dichos términos**.[32] Énfasis nuestro.

**C.**

---

[27] *Íd.*

[28] *Íd.*

[29] *Íd.* a la pág. 954.

[30] *Íd.* (Citas omitidas).

[31] 3 LPRA sec. 9641.

[32] 3 LPRA sec. 9654.

Constituye norma jurídica firmemente establecida en el ámbito del derecho administrativo, que los tribunales deben concederle la mayor deferencia a las decisiones administrativas por gozar las mismas de una presunción de validez, dada la experiencia que se les atribuye a estas.[33] La anterior normativa se fundamenta en que son los organismos administrativos los que poseen vasta experiencia y el conocimiento especializado sobre los asuntos que por ley se le han delegado.[34]

En cuanto a las determinaciones de hechos formuladas por la agencia recurrida, el Tribunal Supremo de Puerto Rico ha establecido reiteradamente que, como norma general, los tribunales no intervendrán con estas, siempre y cuando se desprenda del expediente administrativo evidencia sustancial que las sostenga. Al realizar dicha determinación, los tribunales deben utilizar un criterio de razonabilidad y deferencia.[35]

Ahora bien, las conclusiones de derecho realizadas por las agencias serán revisables en toda su extensión.[36] Sin embargo, esto no significa que los tribunales pueden descartar libremente las conclusiones e interpretaciones de la agencia.[37]

El Tribunal Supremo ha clarificado que la deferencia concedida a las agencias administrativas únicamente cederá cuando:

> (1) la determinación administrativa no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúa arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional; o (4) cuando la actuación

---

[33] *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744 (2012); *Torres Santiago v. Depto. Justicia,* 181 DPR 969, 1002 (2011).
[34] *Asoc. Fcias. v. Caribe Specialty et al.* II, 179 DPR 923, 940 (2010); *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 186 (2009).
[35] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 821-822 (2012). (Cita omitida).
[36] *Torres Santiago v. Depto. Justicia,* supra, a la pág. 1003; *Asoc. Fcias. v. Caribe Specialty et al.* II, supra, a la pág. 941.
[37] *Torres Santiago v. Depto. Justicia,* supra; *Asoc. Fcias. v. Caribe Specialty et al.* II, supra; *Otero v. Toyota,* 163 DPR 716, 729 (2005).

administrativa lesiona derechos constitucionales fundamentales.[38]

En cuanto a la comunicación o prueba, que haya sido obtenida de forma *ex parte* en un procedimiento administrativo, nuestro Tribunal Supremo determinó hace varias décadas, que tal actuación pudiera constituir una violación al debido proceso de ley. Así se explica, la opinión del Tribunal Supremo en el caso *Escudero v. Junta de Salario Mínimo*,[39] que reconoce:

> Si la Junta creyese necesario, después de **terminada una audiencia pública y antes de emitirse un decreto**, obtener mediante investigación alguna información que se propone **tomar en consideración al decidir un caso**, debe como cuestión de debido procedimiento **hacer llegar a las partes interesadas los resultados de la investigación y concederles una oportunidad de contrainterrogar y de refutar antes de decidir el caso.** (Énfasis nuestro)

Más adelante, en *López v. Junta de Planificación*,[40] nuestro más Alto Foro, reiteró que;

> [l]a Junta de Planificación no podía tomar razón de **ninguna recomendación hecha por la Oficina de Turismo después de terminarse la vista pública, pues el recurrente tenía derecho en dicha vista a confrontarse con la recomendación, contrainterrogar a los autores del informe, presentar prueba en contrario para explicarlo o rebatirlo y argumentar contra el mismo.**[41] (Énfasis nuestro).

**D.**

La incuria se define como la "dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad".[42] Su objetivo primordial es evitar premiar a una parte que se cruza de brazos aun conociendo la existencia de su derecho, si con ello se

---

[38] *IFCO Recycling, Inc. v. Aut. Desp. Sólidos*, supra, a las págs. 744-745, citando a *Empresas Ferrer v. A.R.PE.*, 172 DPR 254, 264 (2007).
[39] *Escudero v. Junta de Salario Mínimo*, 66 DPR 594, 599 (1946). (Citas omitidas).
[40] *López v. Junta de Planificación*, 80 DPR 646, 669 (1958).
[41] *Íd.*
[42] *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 236 (2014); *P.I.P. v. E.L.A. et al.*, 186 DPR 1, 13 (2012); *Aponte v. Srio. de Hacienda, E.L.A.*, 125 DPR 610, 618 (1990).

causa perjuicio a la otra parte o se lesionan importantes intereses públicos o privados.[43]

"La reclamación tardía va en detrimento de la parte contraria, sobre todo cuando se tuvo amplia oportunidad de reclamar diligentemente sus derechos".[44] Por tanto, el paso del tiempo puede impedir que un reclamante reciba el remedio que solicita y, en ese sentido, la doctrina de incuria establece que tal inacción por un largo periodo de tiempo impide que se provean los remedios solicitados.[45] Sin embargo, no basta el mero transcurso del tiempo para impedir el ejercicio de la causa de acción, sino que deben evaluarse otras circunstancias antes de decretar la desestimación del recurso instado.[46] En particular, se debe considerar la justificación de la demora incurrida, el perjuicio que esta conlleva y el efecto sobre los intereses privados o públicos involucrados en el asunto.[47]

Ahora bien, la doctrina de incuria aplica tanto cuando no existe un término reglamentario o en ley para realizar determinada acción, así como cuando existe un término que no se notificó debidamente.[48] De esa forma, ante la ausencia de un término reglamentario, el Tribunal Supremo de Puerto Rico ha aplicado el criterio de "término razonable".[49] En específico, la incuria envuelve la dilación injustificada en la presentación del recurso y el perjuicio que ello pueda ocasionar a otras personas, según las circunstancias.[50] Asimismo, es necesario considerar el efecto que tendría la concesión o la denegación del auto sobre los intereses privados y sociales en presencia, así como los méritos y las

---

[43] *P.I.P. v. E.L.A. et al.*, supra.
[44] *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311, 341 (2012).
[45] *Íd.*
[46] *P.I.P. v. E.L.A. et al.*, supra, a las págs. 13-14; *Comisión Ciudadanos v. G.P. Real Property*, 173 DPR 998, 1020 (2008).
[47] *Íd.* Véase, además, *Rivera v. Depto. de Servicios Sociales*, 132 DPR 240 (1990).
[48] *Consejo Titulares v. Ramos Vázquez*, supra.
[49] *Íd.*, a las págs. 341-342.
[50] *Íd.*; *Torres Arzola v. Policía de P.R.*, 117 DPR 204 (1986).

circunstancias del caso, pues esta doctrina está vinculada a la idea fundamental de la equidad.[51] Por tanto, "al aplicarse esta doctrina, se apela a la razón y a la conciencia, ante la necesidad de encontrar y proveer soluciones justas".[52]

Consonó con lo anterior, para que una agencia cumpla con el debido proceso de ley, la parte afectada con su determinación debe enterarse efectivamente de la decisión final que se ha tomado en su contra.[53] La notificación adecuada supone además, que se le advierta a las partes de: (1) su derecho a solicitar reconsideración de la decisión tomada; (2) el derecho a solicitar revisión judicial o juicio de novo, según sea el caso; y (3) los términos correspondientes para ejercitar dichos derechos.[54] El incumplimiento con alguno de estos requisitos resulta en una notificación defectuosa, por lo que no comienzan a transcurrir los términos para solicitar los mecanismos procesales posteriores o la revisión judicial del dictamen, quedando éstos sujetos a la doctrina de incuria.[55]

**III.**

Expuesta la norma jurídica, procedemos a aplicarla a los hechos ante nuestra consideración. De entrada, y en atención al primer señalamiento de error, el Sr. Alicea, aduce que erró la Oficina de Planificación al notificar la resolución recurrida sin las advertencias adecuadas sobre el recurso de revisión disponible y además, sin la expresión de los términos. Veamos.

Al examinar la resolución fechada el 13 de octubre de 2023, mediante la cual el Sr. Alicea fue notificado de la denegación de su solicitud, observamos que dicha comunicación no cumple con los

---

[51] *Consejo Titulares v. Ramos Vázquez*, supra, a la pág. 242.
[52] *Íd.*
[53] *Río Const. Corp. v. Mun. de Caguas*, 155 DPR 394, 405 (2001); *Nogama Const. Corp. v. Mun. de Aibonito,* 136 DPR 146, 152 (1994).
[54] 3 LPRA sec. 9654.
[55] *Maldonado v. Junta Planificación*, 171 DPR 46, 57-58 (2007); *IM Winner, Inc. v. Mun. de Guayanilla*, 151 DPR 30, 39 (2000); *Asoc. Vec. de Altamesa Este v. Mun. San Juan,* 140 DPR 24, 36 (1996).

requisitos mínimos que requiere el debido proceso de ley, antes discutidos. La misma no contiene apercibimiento alguno para solicitar reconsideración o revisión ante el Tribunal Apelativo, ni de qué término tiene disponible para ello, conforme dispone la Ley Núm. 37-2017, *supra.*

Por lo tanto, resulta obligatorio concluir que la notificación que se le cursó al Sr. Alicea fue defectuosa por no cumplir con los requisitos mínimos que establece nuestro ordenamiento jurídico. Como expusimos, la notificación correcta es característica imprescindible del debido proceso de ley, y no constituye un mero requisito. No habiéndose informado al Sr. Alicea de los derechos procesales que le asisten, no comenzó a decursar el término para acudir en apelación o revisión judicial. Así, el término dentro del cual debió interponerse el correspondiente recurso quedó sujeto a la doctrina de incuria.

Ante este cuadro, colegimos que el Sr. Alicea compareció ante esta Curia dentro del término establecido en la Ley Núm. 37-2017, *supra.* Aclaramos, que una falta o insuficiencia en el contenido de una notificación, privan al foro apelativo de su jurisdicción, pues el transcurso del tiempo para la revisión no ha comenzado a transcurrir.[56] Sin embargo, nuestro más Alto Foro, ya ha resuelto que, "[h]abiendo la parte presentado su recurso y ante la ausencia de la doctrina de incuria el Tribunal de Apelaciones debe resolverlo en los méritos."[57] Por lo tanto, aunque el error señalado por el Sr. Alicea fue cometido, ante la ausencia de incuria, atenderemos el recursos en sus méritos.

Establecido lo anterior, procedemos al análisis conjunto de los siguientes tres (3) errores formulados, debido a que se encuentran estrechamente relacionados. Mediante éstos, el Sr. Alicea adujo que

---

[56] *PR Eco Park et al. v. Mún. de Yauco,* 202 DPR 525, 540 (2019).
[57] *Íd.*

la Oficina de Planificación erró y actuó de forma *ultra vires* al realizar una consulta y obtener información de manera *ex parte*, proveniente de la Autoridad de Carreteras y Transportación (ACT). Esto, luego de haber completado el expediente administrativo y que el oficial examinador emitiera su informe. De otro modo, también arguye que la Oficina de Planificación erró al considerar la información obtenida de forma *ex parte*, para fundamentar sus determinaciones y en consecuencia, denegar la recalificación del predio a Comercial Intermedio (C-I).

En síntesis, nos corresponde determinar si la comunicación suscrita entre la ACT y la Oficina de Planificación constituye una comunicación *ex parte* de las prohibidas por nuestro ordenamiento y si esta, violentó el debido proceso de ley del Sr. Alicea. Entendemos que sí. Veamos.

Según surge del expediente de autos, la Oficina de Planificación realizó una vista pública para atender la solicitud de cambio presentada por el Sr. Alicea. Luego de haber concluido la vista, inspeccionar los documentos y evaluar el expediente administrativo, el oficial examinador emitió un informe concluyendo que el predio cumple con los requisitos sustantivos para ser recalificado de Residencial Intermedio (R-I) a Comercial Intermedio (C-I).

Sin embargo, luego de completado el expediente administrativo la Oficina de Planificación tuvo conocimiento a través de la ACT, que el predio a ser recalificado será afectado por la construcción de la carretera PR-5. Por otro lado, también advino en conocimiento de que alegadamente, existen casos de expropiación por parte de la ACT.[58] Como resultado de lo anterior, la Oficina de Planificación emitió la resolución recurrida, denegando la solicitud

---

[58] Apéndice del recurso, pág. 102.

por entender que el predio se encuentra en un proceso de expropiación y que además será afectado por la carretera PR-5.

Es harto conocido que una agencia administrativa tiene que salvaguardar garantías mínimas procesales establecidas en la Sección 3.1 de la Ley Núm. 38-2017, *supra*. Pues, toda parte que participa en el procedimiento administrativo tiene derecho a que la decisión sea basada en el expediente.

Resulta claro que la Oficina de Planificación, al emitir su decreto, utilizó como fundamento la carta y la comunicación obtenida de forma *ex parte*. Esa prueba se obtuvo con posterioridad a la vista y no le fue notificada al Sr. Alicea. En otras palabras, no se le otorgó al recurrente la oportunidad de examinar la carta y corroborar la alegada expropiación. Además, hemos constatado que la carta en controversia no formó parte del expediente administrativo, conforme requiere la normativa jurídica.

Hay que tener presente, que el Tribunal Supremo ya ha resuelto que una agencia no puede recibir información oral o escrita de otro organismo administrativo luego de la vista. Pues de lo contrario, se estarían trastocando los derechos de las partes a contrainterrogar, presentar prueba en contrario y argumentar en su favor. Con su actuación, la Oficina de Planificación llegó a una determinación basada en una prueba que no se discutió en la vista y que, a todas luces, no obra en el expediente. Esta violación al debido proceso de ley acarrea la inevitable revocación de la Resolución recurrida. Repetimos,

> [el] **derecho a una vista pública no tendría sentido alguno** si se permitiera [al organismo administrativo] **fundar su decisión en evidencia recibida sin el conocimiento de las partes, fuera de la audiencia, sin dar a las partes interesadas la oportunidad de rebatirla o explicarla** mediante la repregunta o la presentación de otra evidencia en contrario.[59] Énfasis nuestro.

---

[59] *López Santos v. Asoc. de Taxis*, 142 DPR 109, 9 (1996). Citando *López v. Junta de Planificación*, 80 DPR 646, 670 (1958).

**IV.**

Por      los      fundamentos      esbozados,      revocamos la *Resolución* recurrida  y  devolvemos  el  caso  a  la  Oficina  de Planificación para que celebre una vista administrativa a tenor con lo dispuesto en esta Sentencia.

**Notifíquese.**

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La jueza Cintrón Cintrón disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones